MARCHECK et al., Appellants, v. KLUTE et al., Respondents.

St. Louis Court of Appeals, October 20, 1908.

1. **LANDLORD AND TENANT: Safe Premises: Duty of Landlord.** Where a landlord leases separate portions of the same building or premises to different tenants and reserves under his control those parts of the building or premises used in common by all the tenants, he is under an implied obligation to keep in safe condition the parts over which he reserves control. This applies to premises let to a single tenant where the landlord retains control of parts of such premises.

2. ———: ———: ———: Where a man was employed to drive teams and was given for the use of himself and family rooms in the loft of a barn in which his teams were stabled, and where there was a hay chute, a dangerous opening, in a part of the loft over which it was not necessary for the tenant to pass in gaining access to his rooms, although such hay chute was accessible to him and his family, the landlord was not under obligation to the employee to cover the hay chute or keep it safe.

3. ———: ———: ———: **Tenant's Family.** In such case the landlord owed no greater duty to the infant child of the tenant than he owed to the tenant himself and was not liable, on account of an implied obligation to repair, to the tenant for the death of the child caused by falling in the hay chute while playing in that part of the loft where it was not necessary to go in order to have access to the rooms.

4. ———: ———: **License.** The landlord in such case was not liable for failing to keep the premises in repair on account of the fact that the tenant and his family had the privilege to go over that part of the premises where the danger was.

5. ———: ———: **Covenant to Repair.** Whether, under the circumstances, an agreement by the lessor that the chute would be covered, being as it was on a part of the premises not leased but over which the tenant was licensed to go; rendered him liable for the death, is not decided.

6. ———: ———: ———: **Action on Contract.** Whether an action in such case on a covenant to repair, which might have been maintained by the infant for whose benefit the covenant was made, would be transmitted to the parents of the infant by the statute (sections 2864 and 2865, Revised Statutes 1899), is not decided.

Marcheck v. Klute.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald*, Judge.

AFFIRMED AND REMANDED.

*Warren D. Isenberg* and *Sturdevant & Sturdevant* for appellants.

*Rassieur, Schnurmacher & Rassieur* for respondents.

(1)   The petition does not allege any contract or agreement on the part of defendants to alter the premises or to make any change therein.   In the absence of such an agreement, the defendant was not bound to do so, and the alleged defect not being latent or concealed, but open, obvious and visible, defendant cannot be held liable. 18 Am. and Eng. Ency. Law, p. 215; Taylor's Landl. and Ten. (7 Ed.), sec. 175; Peterson v. Smart, 70 Mo. 34.   (2)   The chutes or openings, through one of which the child of plaintiffs fell, were open and visible, and the condition of the premises at the time of the accident was exactly the same as when plaintiffs entered into possession.   There was no warranty of safety and no fraud or concealment on the part of the defendants concerning the condition of the premises, and, under the circumstances, there could have been none.   Both plaintiffs saw, and could not help seeing, the openings or chutes in the hay loft floor.   Under the facts, the plaintiffs as a matter of law assumed all risks and should have been nonsuited.   Taylor, Landlord and Tenant (7 Ed.), secs. 215, 224, 225; Ward v. Fagan, 28 Mo. App. 117, 101 Mo. 669; Roberts v. Cottey, 100 Mo. App. 503; Vai v. Weld, 17 Mo. 232; Eyre v. Jordan, 111 Mo. 424; Jaffe v. Harteau, 56 N. Y. 398; O'Brien v. Capwell, 59 Barb. 497; Doyle v. Railroad, 147 U. S. 413; Keats v. Cadogan, 10 C. B. 591; Thompson v. Clemens, 96 Md. 196.

STATEMENT.—These plaintiffs are husband and wife, and their suit is for damages for the death of their son, Oliver Anthony Marcheck, alleged to have been caused by the negligence of defendants in particulars to be stated presently. Defendants conduct a grocery store at No. 3900 Shenandoah avenue in St. Louis. The description of the premises by the witnesses was fragmentary, but we understand they were on the southwest corner of Shenandoah avenue and some other street. The lot fronts on the avenue and runs southwardly to an alley. A two-story stable where defendants' horses and vehicles were kept, stood on the rear end of the lot. In February, 1906, plaintiff William J. Marcheck, entered defendants' employ. His duties were to deliver goods and take care of the horses and vehicles of the firm; for which services he was to be paid seven dollars a week and granted the use of two rooms in the second story of the stable for a residence. The entrance to the rooms was by a stairway running up the north side of the building to a landing, from which a door opened into the second story or loft of the stable. Immediately to the left of the entrance was the first of the two rooms occupied by plaintiffs and used by them for a kitchen. Further down was the second room which they used for a sleeping chamber. The rooms were on the east side of the second story of the stable, which was about eighteen or twenty feet deep north and south. The west part of the loft was used as a storage place for harness, a buggy and hay. There were two hay chutes in this part of the loft, about one and a half by three feet in dimension. One of these was toward the south end of the loft and the other against the north wall and at a distance from the entrance door, estimated by the witnesses at from three to six feet. Some witnesses said when the door from the outside landing was opened into the loft and turned back against the north wall, it nearly touched the north chute; whereas

Marcheck v. Klute.

other witnesses said it fell two or three feet short of reaching the chute. Hay was dumped into the chutes and slid from the loft to the mangers below. These chutes were constructed of boards extending down to the mangers, projecting seven or eight inches above the floor of the loft and uncovered. Between the two chutes, harnesses and hay were deposited and a buggy was swung. This sketch shows how the loft was arranged:

Two months after plaintiffs had moved into the loft, their son Oliver fell into and down the north chute, alighting on his stomach over a crossbar which separated the manger at the foot, and receiving an injury from which he died two days afterward. The accident happened before noon of April 24, 1908, and what is known about it was testified by the mother of the child. She said she was working in the kitchen with the door between it and the loft open. Oliver said he wanted to play in the yard where his father was, and she told him he could not go alone but she would take him as soon as she had the time. As this was said, the child ran out of the kitchen and into another part of the loft to get a toy wagon to take with him to the yard when his mother was ready to go. She instantly heard the wagon strike the chute, called to her son, who answered, and on going to the mouth of the chute, she saw him lying across the crossbar. Mr. Marcheck testified defendants required him to live in the stable so he would be near the horses and testified further defendants knew he had small children; that he spoke to one of them about the hay chutes and this defendant promised to have them fixed so as to be safe, saying they would send for men to put hinged covers on them; that he (Marcheck) took it for granted this would be done and said no more about the matter. The petition declares on defendants' negligence in permitting the hay chutes to remain uncovered in dangerous proximity to the part of the loft plaintiffs and their family were compelled to use in going to and from their rooms; but nothing is said about the promise to cover the chutes; the substance of the charge being that the chutes were in close proximity to the stairway and in the common passageway to plaintiffs' rooms; and defendants negligently failed to provide coverings or guards for them as was their duty under the law, and negligently permitted them to remain without guards or protection of any

kind, though defendants knew them to be dangerous to plaintiffs and their family, and in consequence of this negligence plaintiffs' child fell into the chute and was killed. The answer is first a general denial, second, an averment the rooms occupied by plaintiffs and the floor of the hay loft, were in the same condition when the accident occurred as when plaintiffs took the rooms; third, that defendants did not, when they hired Marcheck, or when he moved into the premises, make any representation or statement to plaintiffs, or either of them, concerning the condition of the premises, and the condition of the floor of the loft and of the chutes was obvious, and plaintiffs assumed whatever risk attended the occupancy. The court instructed the jury in substance as follows: that if plaintiff Marcheck was in the employ of defendants, and was residing as a tenant with his family in the rooms in and adjoining the hay loft, in defendants' possession and control, and it was necessary for plaintiff and his family to pass over part of the hay loft to reach the stairway leading to the ground, and defendants permitted a hay chute to remain without covering or guarding, so near the passageway from said rooms as to make the same dangerous to persons using it with ordinary care, and if such condition was known to defendants, or by ordinary care could have been known to them, and defendants, in the exercise of ordinary care to persons occupying said rooms could have guarded or covered said hay chute and made the same safe, then the omission of defendants to cover it and leaving it without guar˜s, constituted negligence and they were liable to plaintiffs for all damages which directly resulted from such negligence; and if the jury found plaintiffs' minor son, while rightfully in and about the passageway and in the exercise of such discretion as would be exercised by a child of his age, fell through the hay chute because of its unguarded and dangerous condition, the verdict must be for plaintiffs.

The court refused all the instructions asked by defendants, which were, in the main, to the following effect: if the jury believed plaintiffs' son came to his death while he was playing in the hay loft, the verdict must be for defendants; that if the openings in the floor were obvious, visible and apparent, and known to plaintiffs when they took the rooms, they could not recover; that plaintiffs by occupying the rooms, assumed all the risk incident to the openings in the floor; that there was no evidence of a warranty by defendants of the safety of the premises which plaintiffs would occupy or the safety of the passageway or approach thereto, and the law would not, when the defects complained of were visible and apparent, imply a warranty. Two or three other instructions, which we deem unnecessary to recite, were refused. The jury returned a verdict for plaintiffs for $2,000, but on motion of defendants for a new trial, it was set aside by an order reciting this was done because the court had erred in admitting evidence and in the refusal of instructions. The present appeal was prosecuted from the order sustaining the motion for new trial.

GOODE, J. (after stating the facts).—The question of the duty of a landlord to keep in reasonably safe condition for use, parts of premises he retains control of, intending them to be used by tenants to whom other parts are let, has been the source of conflicting decisions. Many cases on the subject are collected in the note to Dollard v. Roberts, 14 L. R. A. 238, and the conflict will be observed on reading said note and the text and notes of standard treatises on landlord and tenant law. The question has been presented usually in instances where an owner of a house had let apartments in it to several tenants, but had retained control of such parts as porches, halls and stairways for the use in common of his tenants; and it is generally held the owner,

whether he agrees to do so or not, must look after the condition of these common appurtenances. But as to whether an owner's duty to a particular tenant is to keep an appurtenance of which the owner has control only in as good repair as when the tenant took possession, or in safe repair, or the tenant must take care of it himself, there are contrary opinions, as the following citations will make manifest: Looney v. McLain, 129 Mass. 33; Bowe v. Hunking, 135 Mass. 380; Moynihan v. Allyn, 162 Mass. 270; Quinn v. Perham, 151 Mass. 162; Neyer v. Miller, 19 Jones & S. 516; Bold v. O'Brien, 12 Daly 160; Doupe v. Genin, 45 N. Y. 119; Peil v. Reinhart, 127 N. Y. 381; Humphrey v. Wait, 22 N. C. C. 581; Payne v. Irvin, 144 Ill. 488; Buckley v. Cunningham, 103 Ala. 449; 49 Am. St. 42; McCarthy v. Bank, 74 Maine, 415; Rosenfield v. Arrol, 44 Minn. 395; Jones v. Freidenberg, 66 Ga. 505; and see note in 14 L. R. A., supra. A rule on this subject was prescribed by our Supreme Court in McGinley v. Alliance Trust Co., 168 Mo. 257, and the text of the 18 Am. and Eng. Ency. Law (2 Ed.), 220, adopted. It reads as follows:

"The rule laid down by the weight of authority is that when the landlord leases separate portions of the same building to different tenants, and reserves under his control those parts of the building or premises used in common by all the tenants, he is under an implied obligation to use reasonable diligence to keep in a safe condition the parts over which he so reserves control."

In the McGinley case the evidence justified the conclusion that the owner of certain tenement houses wherein apartments were let to different parties, had retained control of the porches and stairways for purposes of construction and repair; and this being true, he was held liable for an injury to the daughter of a tenant due to a defective outside stair railing giving way, it appearing the landlord could have learned of the condition of

the railing by ordinary care. The premises in question were not demised to several tenants, but the case falls within the principle of the McGinley case and others that deal with the responsibility of owners of apartments. It involves the essential fact on which such owners are held responsible for the condition of those parts of the buildings not turned over to the tenants; i. e., that the landlord is in control of those parts and may enter on them to make repairs. That this is the decisive fact in determining where the duty     rests to provide for the safe condition of any part of demised premises, was declared in the McGinley case, and is recognized generally.    The Supreme Court said that ordinarily when repairs are needed on a house in the possession of a lessee, he may make them, and no one else has the right to enter for the purpose; that right and duty go together in such matters, and if one may enter by virtue of his estate in the premises, and safety requires repairs, it is his duty to make them; but when he has no right to enter, he has no such duty. No part of the upper loft of defendants' stable was let to Marcheck except the two living rooms; but the lease carried the right to use the stairway, the landing and a portion of the loft in front of the doors of the rooms, to pass in and out. [Jones, Landlord and Tenant, sec. 104; Taylor, Landl. and Tenant (9 Ed.), 160.] The outside door used by plaintiffs and their family in going to and from their rooms, was immediately beside the first room, or kitchen. No aisle down the length of the loft was railed off for a passageway, but in reason plaintiffs were entitled to use at least the width of the entrance; and we hold under the decision supra of the Supreme Court, it was the duty of defendants, even though they gave no promise about it, to use care to keep this portion of the floor reasonably safe. The strip was not turned over to plaintiffs for their exclusive use, but might be used as well by whomsoever had occasion to

go into the unleased side of the loft on defendants' business. It is fairly inferable that the strip remained in defendants' control for the purpose of repairs. If so they were liable for the accident to plaintiffs' son, if the chute into which he fell was so near the passageway as to render the latter dangerous. This question was submitted to the jury as an issue of fact, and, indeed, the gravamen of the case stated in the petition was the dangerous proximity of the chute. Study of the evidence has satisfied us a case for the jury was not made out. The chute, which projected considerably above the floor, was so far from the passageway that to conclude it made the passageway dangerous would be unreasonable. Defendants owed no greater duty to the deceased than they owed to their tenant Marcheck himself. This proposition was decided in the McGinley case, wherein it was said any member of a tenant's family stands in the same relation to the landlord as the tenant himself, so far as the right to recover for an injury due to defects in the tenement is concerned, and that the question of the landlord's liability when a member of the tenant's family is hurt might be thus stated: "Is a landlord liable to his tenant for damages under such circumstances?" To the same effect is Peterson v. Smart, 70 Mo. 34, wherein a child about the age of plaintiffs' deceased son was injured by falling from a high terrace; the suit being founded on the supposed negligence of the owner of the property in removing the fence along the top of the terrace. The chute down which deceased fell was, according to the testimony most favorable to plaintiffs' cause, more than three feet from the entrance door and, moreover, was against the north wall of the building. Therefore it was so far out of the way or aisle that, in order to reach the chute in going to the outside door, a person would have to diverge from three to six feet from the right course, and would have to go within a foot and a half of the north wall at a point three or

133 App—19

more feet from the door. Plainly the chute in that position can not be regarded as rendering the approach to plaintiffs' rooms dangerous. There is another important fact to be noticed. It is clear from the testimony of Mrs. Marcheck the boy was not endeavoring to use the passway in order to go out of the loft when he fell into the chute. He had asked permission to go to the yard where his father was, and his mother told him he could not go alone, but she would accompany him presently. Thereupon the child ran for his wagon that he might take it with him when his mother was ready to go, and immediately she heard the wagon strike the chute. No conclusion can be drawn from these facts except that the boy was running across the loft with his wagon when he fell and was not attempting to go out of the door or otherwise use the passageway. The accident occurred in broad daylight and probably is to be attributed to the heedlessness of childhood.

Having determined the chute did not render the approach to the leased premises dangerous, our next inquiry relates to defendants' duty to plaintiffs and their family in respect of keeping the floor of the part of the loft which was neither parcel of nor appurtenant to the leasehold, in such a state that one might walk on it safely. No one was bound to use said part of the floor except Marcheck, who would have occasion to do so in attending to his duties as hostler. Still it is reasonable to infer the rest of the family were not forbidden to walk over it; in other words, were licensed to do so. Conceding plaintiffs' children were licensed to play in the loft, defendants were under no duty to keep the floor safe for their use in that manner, and unless guilty of misfeasance, were not liable for an accident received by them. See Glaser v. Rothchild, 106 Mo. App. 418, 80 S. W. 332 and cases cited in opinion. This is true unless we say the chute was so apt to lure a child into danger as to range the action with the "turntable"

cases, there being no deception about the state of the premises chargeable to defendants and the condition of the chute being obvious. [Stout v. Railroad, 17 Wall. 657; Koons v. Railroad, 65 Mo. 592.] The doctrine of those cases will not be extended (Witte v. Stifel, 126 Mo. 295, 28 S. W. 891; Barney v. Ralroad, Id. 373, 28 S. W. 1069), but suffice to say on this point, the petition and proof proceeded on a different theory, to-wit: that the aperture deceased fell through was so near the passageway as to render the way unsafe. The cause was submitted in the instructions for plaintiffs on an unsound theory of law, as the case pleaded was not established prima facie.

It is insisted by counsel for plaintiffs the answer of defendants aided the petition and under the answer Marcheck's testimony of defendant's promise to cover the chute was competent and plaintiffs could recover on it. This promise was not declared on, as it must have been to afford plaintiffs a cause of action. The portion of the answer supposed to help the petition and make evidence of the promise competent, was the plea of assumption by plaintiffs when they accepted the premises, of the risk of injury from the chute. If plaintiffs had established a prima-facie case in tort by evidence proving the chute made the passageway dangerous, perhaps they might have proved defendants promised to cover it in refutation of plaintiffs' supposed assumption of the risk.

Did any duty on the part of defendants accrue to deceased by virtue of the promise to cover the chute, and could deceased, if he had lived, have recovered damages resulting from non-performance of the duty? The weight of authority is that a lessor's covenant to repair will not support an action for a personal injury due to failure to make repairs, because those injuries are deemed too remote to have been contemplated by the parties when the covenant was given. [18 Ency. Law, 216; Mc-

Adam, Landlord and Tenant, 438; Jones, Landlord and Tenant, 592; Thomson v. Clemens, 96 Md. 196, and cases cited on page 206.] This rule cannot be applied to the present case for two reasons. In the first place the very purpose of the promise was to safely guard plaintiffs' children, and hence an injury to one of them in consequence of failure to perform, was contemplated by the parties when the stipulation was given. In the next place, the stipulation was not for repairs on the leasehold, or an appurtenance, but on another portion of the premises which plaintiffs and their family were licensed to use; and therefore the rule as between landlord and tenant, would be in point only by analogy, even if the stipulation had not been made with a view to taking precautions against a personal injury. And sometimes when the covenant is to repair leased premises, the courts allow a recovery for a personal injury due to a breach; either because it appears this kind of injury was within the intention of the covenant, or the circumstances of the failure to perform show negligence, on the part of the landlord; that is to say, show not only that he omitted to do what he had agreed, but omitted after he was apprised that performance was essential to the safety of the tenant and his family. [Thomson v. Clemens, 96 Md. loc. cit. 209, 211.] If plaintiff's son had been injured but not killed, we hold he might have sued on defendants' promise; which seems to have been an integral part of the original contract with Marcheck, therefore supported by a consideration, and given for the benefit of plaintiffs' little children, of whom the deceased was one. [Cress v. Blodgett, 63 Mo. 449; Merkel v. Tel. Co., 19 Mo. App. 80.]

Other questions spring into sight in connection with such an action. One is whether it would lie in tort or only in contract, the duty to cover the mouth of the chute not being imposed by law in the absence of a stipulation. There are decisions allowing an action in

tort in the nature of trespass on the case for failure to keep such a stipulation. [Thomson v. Clemens, supra; Edwards v. Railroad, 98 N. Y. 245, 248; Spellman v. ——; 36 Hun 174; Lieber v. Blanc, 76 Cal. 173.] A cognate question was investigated by this court in Wernick v. Railroad, 131 Mo. App. 37, 109 S. W. 1027. The other cases just cited arose between landlords and tenants, but we suppose the principle of the decisions would include a stipulation to make licensed premises safe for a tenant who was privileged to use them in connection with his leasehold.

Another question to be considered is whether if the deceased might have sued in contract had he lived, the right to sue in that form of action was transmitted to the plaintiffs on his death by our statute, which provides that when the death of any person shall be caused by the wrongful act, neglect or default of another, and the act, neglect or default was one for which the party killed might have sued if he had been injured merely, the party in fault shall be liable to the survivors of the deceased as designated in section 2864 of the statutes. [R. S. 1899, sec. 2865.] We have found no case wherein the court considered whether default in the performance of a contract whereby another's death was caused, falls within the purview of such a statute. All the decisions we have seen were in actions of tort. Still the words "act, neglect or default" are broad and various.

It might be necessary to determine whether an amendment to the petition declaring on defendants' promise would substitute a new cause of action.

These questions have not been treated by counsel and we are unwilling to decide them without the help of briefs or arguments. Hence we will simply affirm the order for new trial and remand the cause for plaintiffs to take such a course as their counsel may advise. All concur.