## CLINTON WILT, Respondent, v. MARGARET COUGHLIN, Appellant.

Springfield Court of Appeals, December 11, 1913.

1. **APPELLATE PRACTICE: Trial Court: Refusing Demurrer: Appellate Court Considers Facts How.** The appellate court considers the facts of a case in the light most favorable to the plaintiff in reaching a decision as to whether or not the trial court erred in refusing defendant's request to take the case from the jury.

2. ———: **Motion for New Trial: Mistake of Law in Sustaining: Appellate Court Will Reverse.** Where the trial court sustained a motion for a new trial because of a mistake in construing the law, it is incumbent on the appellate court to reverse its order.

3. **LANDLORD AND TENANT: Premises not Kept in Repair: Landlord not Liable Without Covenant.** A landlord cannot

be held liable for failure to keep premises in repair while in tenant's possession in the absence of a covenant to repair.

4. ———: **Landlord Liable for Misfeasance: Repair: No Implied Covenant for.** A landlord is only liable for acts of misfeasance and there is no implied covenant that premises are in good repair when leased.

5. ———: **Hidden Dangers: Liability of Landlord.** Where such hidden dangers exist that an injury resulting to a tenant or his property is a natural and probable consequence, the landlord is liable for such injury.

6. ———: **Contract of Parties: Usage of Premises.** Action against landlord by tenant for injuries to tenant's horse occasioned by falling into a cesspool in the yard of the leased premises. Evidence considered and *held* to show that the parties to the rental contract never contemplated that plaintiff's horses should run on the part of the premises where the cesspool was located.

7. **NEGLIGENCE: Damages Possible but not Probable From: Liability.** In an action for consequential damages resulting from negligence, if the injury was possible but not probable according to ordinary and usual experience, it was not negligence to fail to take precautionary steps to forestall it.

8. **PROPERTY OWNERS: Under no Obligation to Make Premises Safe for Animals at Large.** The owner or occupier of land is under no obligation to make it safe for the benefit of the owners of domestic animals which are permitted to run at large.

Appeal from Greene County Circuit Court.—*Hon. Guy D. Kirby,* Judge.

REVERSED AND REMANDED (*with directions*).

*Wright Brothers* for appellant.

(1) Defendant was not required to place the yard in a condition of safety for horses. Marchek v. Klute, 133 Mo. App. 280, 290; Korach v. Loeffel, 168 Mo. App. 421; Glaser v. Rothchild, 106 Mo. App. 418. (2) In the absence of an express warranty that the desired premises are in good repair or fit for a particular use, the law does not imply such a warranty. Burns v. Fuchs, 28 Mo. App. 279, 281; Ward v. Fagan, 28 Mo.

App. 116, 119; Doyle v. Railroad, 147 U. S. 413, 429; Doyle v. Railroad, 147 U. S. 413, 424.

No brief for respondent.

FARRINGTON, J.—This action was instituted in a justice's court, where the plaintiff prevailed. On trial anew in the circuit court the defendant was given the verdict. Plaintiff, however, was successful in having his motion for a new trial sustained and in obtaining an order setting aside the judgment which had been rendered on the verdict. The appeal by defendant is from the refusal of the trial court to set aside its order granting a new trial.

The reason specified by the trial judge for granting plaintiff a new trial was that the verdict was against the instructions of the court and the weight of the evidence.

At the close of the plaintiff's evidence, defendant requested and the court refused to give an instruction in the nature of a demurrer to the evidence, and at the close of all the evidence the court likewise refused defendant's request for a directed verdict. As we are of the opinion that the trial court erred in refusing to take the case from the jury, it will be necessary to consider the facts in the light most favorable to the plaintiff.

The plaintiff in April 1908 rented of the defendant a cottage fronting east on Campbell street which runs north and south in the city of Springfield. On the rear end of the lot, which was about fifty feet in width, was a barn some forty feet in length and sixteen feet in width, the length of the barn running north and south. This barn was located sixty or seventy feet back of the rear end of the cottage. Some outhouses covered the remainder of the width of the lot. The record does not show the existence of any opening directly between the barn or barn lot and the front yard where the cottage stood.

Plaintiff testified that he and his wife rented this cottage, and that soon after doing so he spoke to the defendant about keeping his horses there, and that she informed him it would be all right if he so desired and would fix the barn at his own expense.

An alley runs along the outside of this lot back to the barn and barn lot. Dividing the yard from the alley, from the front of the yard back to the barn or barn lot, is a fence. On the side of the house, located some forty to sixty feet from the barn and barn lot, was a cesspool which had been covered by pine boards on top of which was earth. The cesspool was made when the house was completed and had been finished only a short time when plaintiff moved in the house. Plaintiff admits knowing the cesspool was there, but said he did not know the material used in covering the same.

On the sixth day of July, 1910, while plaintiff was residing at this place, he was awakened by hearing a noise in the side or front yard, and on making an examination found that one of his horses had broken through the top of the cesspool and fallen in. After several hours work plaintiff and others succeeded in getting the horse out. The testimony is convincing that the animal thereafter was of little value owing to the injuries received by the fall into the cesspool. The evidence shows that the planks which covered the cesspool showed deterioration and rot. It is unquestioned that the horse got on top of the cesspool and that the covering was of insufficient strength to withstand his weight.

Plaintiff charges the defendant with maintaining the cesspool in this condition with knowledge of its dangerous character, or that defendant by the exercise of ordinary care and prudence could have known its dangerous character.

Plaintiff testified that the night before the occurrence he went to the barn and saw that his horses—

this one in particular—were securely fastened in their stalls and in the stable. How this horse which was injured escaped from the stable and came to the cesspool no witness attempts to explain. Plaintiff, supported by the testimony of the defendant, states positively that at no time during the tenancy had the front yard been used by animals for grazing or to be in. The nearest part of the cesspool to the alley, along which plaintiff took his horses to and from the barn, was several feet therefrom; besides, there was a fence between the cesspool and the alley. The front yard had no fence dividing it from the street. The only fence mentioned in the record is that running from the street along the alley back to the barn, and this fence divided the alley from the front and side yard in which the cesspool stood. There is no testimony as to the existence of any gate or passageway from the barn lot to the front or side yard. Nor is there any testimony that any horses or stock of any kind had ever been permitted to be in the front or side yard where the cesspool was situated. No guard or fence was built around the cesspool so as to prevent persons or animals walking thereon. So far as the record shows, the only way this horse could have reached the place where the cesspool stood was to go down the alley to the street and come back into the front yard, or to go over some neighboring property and then into the front yard.

Under this state of facts we see no liability on the part of the defendant for this accident. And since the trial court in sustaining the motion for a new trial did so through a mistake in construing the law, it is our duty to reverse its order. [Barr v. Hays, 172 Mo. App. 591, 155 S. W. 1095.]

The action is founded on a tort, not on an express covenant to repair or to keep the premises in repair during the tenancy on the part of the landlord. The law is well settled in this State that in the absence of a covenant to repair, the landlord cannot be held liable

in damages for failure to keep the premises in repair while in the tenant's possession. Nor is there an implied covenant that the premises are in good repair when they are let, the landlord being liable only for acts of misfeasance. [Roberts v. Cottey, 100 Mo. App. l. c. 503, 74 S. W. 886, and cases cited; Graff v. Brewing Co., 130 Mo. App. 618, 109 S. W. 1044, and cases cited; Marcheck v. Klute, 133 Mo. App. 280, 113 S. W. 654, and cases cited; Korach v. Loeffel, 168 Mo. App. 414, 151 S. W. 790, and cases cited.] The landlord, however, would be liable for injuries to the tenant or his property by reason of hidden dangers, provided the hidden danger in a given case is such that the injury which ensues by reason of its existence is the natural and probable consequence of allowing such dangerous condition to exist. And this is the turning point in the case at bar. The evidence clearly shows— giving the plaintiff the full benefit of all its weight and all inferences reasonably deducible—that it was never within the contemplation of the parties to the rental contract that that portion of the premises in which the cesspool stood would be subjected to the weight of a horse or that that part of the premises would be used by the tenant for horses to run on. Had the cesspool been located in the barn lot where horses could reasonably be expected to be kept, or had some member of the plaintiff's family in walking over the cesspool been injured by the breaking of the plank covering, a different case would be presented.

The rule is well stated in the case of Christy v. Hughes, 24 Mo. App. 275. In that case a demurrer was sustained on a stronger showing than that made by the plaintiff in this record because the hogs which got under the house were running at large and were in a place where they had stayed and had ranged for some time, whereas in the present case the plaintiff testified he never allowed the horses to be in the front yard. The decision of that case, as summarized in the sylla-

bus, is as follows: "In the action for *consequential* damages resulting from the *negligence* of the defendant, it devolves on the plaintiff to show that there was such connection between the negligent act and the injury as to bring it within the reasonable contemplation of the actor that such injury would naturally and probably result from such act, and such as ought to have been foreseen by the defendant as likely to flow from his act." To the same effect are the cases of Boone v. Railway Co., 20 Mo. App. 232, and Gilliland v. Railroad, 19 Mo. App. 411, where the same question is discussed. In the case of Fuchs v. City of St. Louis, 167 Mo. 620, 67 S. W. 610, this language is used: "It is not negligence not to take precautionary measures to prevent an injury which, if taken, would have prevented it, when the injury could not reasonably have been anticipated, and would not, except under exceptional circumstances, have happened. If the accident was possible, yet, according to ordinary and usual experience, not probable, it is not negligence not to take precautionary steps to forestall it." Again, in the case of Hoag & Alger v. Railroad, 4 Norris (Pa. St.) 293, which has been cited with approval by our courts, the following holding is announced: "Where it is alleged that an injury arose from negligence the question of the proximate cause is to be decided by the jury upon all the facts of the case, but where the facts are undisputed, and the intervening agency is manifest, it is not error for the court to withhold the evidence from the jury. In determining what is proximate cause, the true rule is, that the injury must be the natural and probable consequence of the negligence, such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrongdoer as likely to flow from his act." The rule is thus declared in Am. and Eng. Ency. Law, vol. 8, page 601: "An individual, however, is not presumed to contemplate the coincidence of events having no

probable or natural connection in the mind and which cannot by prudence, circumspection, and ordinary thoughtfulness be foreseen as likely to happen in consequence of the act in which he is engaged.'' Thompson in his work on Negligence, vol. 1, sec. 956, states the rule in these words: ''In taking care to use his own property so as not to injure his neighbor, one is not bound to look beyond the natural and probable consequences of the act he is about to perform. Thus, if a man, in clearing his uninclosed land of timber, in a new country, sets a tree on fire, and then leaves it to burn down and fall, he will not be liable to pay damages if it fall on his neighbor's horse, happening to stray there.'' The case of Teis v. Smuggler Mining Company, 158 Fed. 260 (opinion by Judge JOHN F. PHILLIPS), reviews many decisions and text-writers on the subject of proximate and remote causes and the interposition of independent forces and agencies. The logic of that opinion is unanswerable and declares the correct principles of law, and the reader who desires to examine this subject in greater detail than is attempted here would do well to read that case. The case of Marcheck v. Klute, supra, turns on the question of the duty of the landlord to keep the floor safe where the chute was located for the use to which it was put in that case, namely, as a place for the tenant's children to play. In the course of the opinion it is said: ''Defendants were under no duty to keep the floor safe for their use in that manner.'' So, in the present case, there was no legal duly upon the defendant to keep the front or side yard and the top of the cesspool safe to guard against the use to which the yard happened to be put by plaintiff's horse.

It is within the knowledge of everyone that front yards in cities are not to be used as stable lots and places in which live stock will be expected to roam. The evidence of the plaintiff wholly fails to account for the manner in which the horse reached the cesspool.

That plaintiff did not expect the horse to be in the yard is shown by his testimony that he never let the horses in the front yard, and that on the night before the horse was injured he went to the barn about nine o'clock and saw that this particular horse was securely fastened in the stable. Under this state of facts, the landlord owed the tenant no greater duty concerning this horse than he owed every other horse owner in the city of Springfield whose horse might have gotten away and strayed into the yard where this cesspool was located, because it was not contemplated by either of the parties at any time that the place where the cesspool was located would be put to any such use. The law is well settled in this and many other jurisdictions that the owner of uninclosed land is under no obligation to make it safe for pasturage, and if stock stray upon it and sustain injuries by falling in a well or other excavation, there is no liability resting on the landowner for such loss. [Hughes v. Railroad, 66 Mo. 325; Turner v. Thomas, 71 Mo. 596; Peek v. Western Union Tel. Co., 159 Mo. App. 148, 140 S. W. 638; Overholt v. Vieths, 93 Mo. 422, 6 S. W. 74; Witte v. Stifel, 126 Mo. 295, 28 S. W. 891; Grindley v. McKechnie, 40 N. E. (Mass.) 764; Knight v. Abert, 6 Pa. St. 472.]

The evidence in this case is that the cesspool was not situated close enough to the alley to make the use of the alley, in an ordinarily prudent manner, dangerous; besides, the undisputed evidence is that between the cesspool and the alley there was a fence. Thompson on Negligence, vol. 1, sec. 945, states the general doctrines applicable to the subject in hand, saying, among other things: "The owner or occupier of land is under no obligation to make it safe for the benefit of the owners of *domestic animals* which are permitted to run at large—and this irrespective of the question whether the rule of law in the particular jurisdiction requires the owners of animals to restrain them, or whether it permits them to run at large and requires

the owners of cultivated fields to fence their cultivations.'' The author just quoted also gives the two exceptions to this rule, one of which is that if it is an attractive nuisance he must pay damages, and the other is that if it is near enough to a pathway or highway so that a person or animal lawfully using such highway might tumble in, the owner would be liable. The facts as stated in this opinion fail to bring this case within either exception.

At the close of the evidence the court should have sustained defendant's motion for a directed verdict. As the case was put to the jury and they found for the defendant, it was error to disturb their finding, and the judgment first rendered was the proper one in this case. It is therefore ordered that this cause be remanded and that the trial court set aside its order granting plaintiff a new trial and enter a judgment on the verdict. *Robertson, P. J.,* and *Sturgis, J.,* concur.