ALBERT MAHNKEN ET UX., Appellants, v. ERNEST GILLESPIE and JESSE COMER.—43 S. W. (2d) 797.

Division One, November 20, 1931.

52

*Barnett & Hays* for appellant.

54

*D. S. Lamm* for respondent, Gillespie.

STURGIS, C.—The plaintiffs, husband and wife, sue for damages for the death of their minor child, who, while at play, fell into and was drowned in a well or cistern, located on the boundary line between the residence properties owned by the respective defendants, but occupied at the time by their respective tenants. The two residence lots in question faced west on Lafayette Street, in Sedalia, Missouri, and were one hundred and twenty feet deep, extending to the Missouri Pacific Railroad right-of-way. The north of the two lots was owned by defendant Gillespie, and the south one by defendant Comer, each having a residence thereon occupied at the time of this accident by their respective tenants. On the east-and-west boundary line between these residence properties and back about sixty-five feet from the front sidewalk there was a well used to some extent at least by the occupants of both residences. This well was

about opposite the rear and back door of each residence, with which it was connected by a paved walk, the covering of the well forming part of the walk. There was also a two-foot concrete walk extending from the front sidewalk to this well, or rather to the concrete covering over the well, so that persons going to the rear doors of these two houses could go from the front sidewalk along this walk to the well covering, which was wider than the walk and elevated some six inches, and then turn to the right to the rear of the Comer residence, or to the left to the rear of the Gillespie residence. The Gillespie residence occupies the larger lot and, judging from the photographs, is the more substantial one of the two, is closer to the well, and from appearances the well belongs to such residence rather than to Comer's.

At the time of the accident the deceased child was playing in the Comer yard, and in some way, no one seeing it at the time, went on to this well covering and fell through an opening six and one-half inches by fifteen inches into the well and was drowned, the body being discovered a little later.

The case proceeds on the theory that the defendants, as owners of these two properties, were under obligations to keep the walk leading to the well and the well covering itself in a safe condition for the use of the occupants, or their guests, of the respective residences. The petition alleges defendants' negligence in this manner:

''Said sidewalk, which is on or approximately on the property line, is maintained for the common use of the tenants occupying both of said residences, and said common way is not in the custody or control of the occupants of either of said residences, but is maintained by the defendants, jointly, for the convenience and use of the tenants and occupants of both houses and their guests.

''At the place where said common way connects with the two private ways above mentioned, there is a platform, which is a part of the common way; and persons using the common way pass over said platform. Said platform covers a well, and there is an opening in said platform, which at the time of the death of Henry Warner Mahnken, and for a long time previous thereto, was covered by a covering made of wood. It was the duty of the defendants to use reasonable care to maintain said common way, including said platform, in a condition reasonably safe for the passage of the tenants in said residence buildings and their guests. The defendants negligently failed to maintain the common way, including said platform, in a reasonably safe condition for the use of said tenants and their guests; and negligently permitted the covering to said well to remain loose and insecure, so that said covering might and did become displaced.

"On the 11th day of June, 1928, the plaintiffs and their son, Henry Warner Mahnken, were the guests of the tenants of the property owned by the defendant Jesse Comer; and as such guest, the said Henry Warner Mahnken was rightfully upon the said premises. While the said Henry Warner Mahnken was such a guest he passed over said common way and came to the place where said well was situate. By reason of the insecurity of the covering to said well, the said Henry Warner Mahnken fell into said well, which then contained a large amount of water; and by reason thereof he was drowned, and thus came to his death. The death of the said Henry Warner Mahnken was the direct result of the negligence of the defendants aforesaid."

These matters were denied by the answers. The court empanelled a jury, heard the evidence of both sides, and then sustained a demurrer to the evidence and directed a verdict for defendants.

The evidence shows that the whole tract, eighty-eight feet frontage, composing these two lots had been owned by one owner named Ferrier, and during his ownership, or before, the two dwelling houses, the well, and the walk leading to same and to the two dwelling houses were constructed. In other words, he or his predecessor in title improved the property in the manner shown while yet one property. Ferrier, as owner, then divided it into two lots, with a residence on each, by conveyances to different grantees. He first sold the south or Comer lot in 1919, by ordinary warranty deed, describing it by metes and bounds so located that the north boundary line of this lot followed the center line of the two-foot sidewalk leading from the front sidewalk to this well, dividing the well also, and extending to the rear end of the lot. This lot by mesne conveyances passed to Kathryn Comer and J. J. Comer, her husband, and the wife died before this accident. Some six months later than the first deed Ferrier sold the north or remaining lot, conveying it by metes and bounds corresponding to the other conveyance. This north lot by mesne conveyances passed to defendant Ernest Gillespie. There are no grants or reservations in any of the deeds as to this alleged common walk or well. Each party took title to his lot by metes and bounds without regard to the walk or well. It might well be inferred, however, that the common grantor and his grantees knew that the boundary line between the two tracts followed the center line of the walk and bisected the well.

At the time of this accident the property of defendant Gillespie was occupied by his tenant Shackles and had been for about three years. He rented the premises at a monthly rental and there was no agreement or covenant of the owner to make repairs or keep the property in safe or usable condition. Likewise, the defendant Comer

had rented his property to a tenant, Mahnken, a brother of plaintiff, and there was no contract or agreement that such owner would make any repairs or keep up the property.

The evidence further showed that at the time Shackles rented the north or Gillespie lot the defendant Comer was himself living in his own property and there was then a chain pump in this well. This pump got out of commission and Shackles's wife and Comer's boy, about twelve years old, without the knowledge of either of the lot owners, took out the old pump and put a board covering over the opening, about six and one-half inches by fifteen inches, into the well. This cover was held in place by a rather heavy stone placed on same. When this child was discovered in the well the stone had been removed and the board covering was pushed to one side. At the time of the accident the deceased child's parents, who lived in the country, were visiting the father's brother, tenant of Comer, and this child and other children were playing in and about the Comer yard. This child was missed and on search being made the body was found in the well. How or just when the rock was moved from the well covering is not known, though Mrs. Shackles, living in the north or Gillespie property, was positive it was in place the day previous. She and her husband were at Boonville the day of the accident.

Each of the defendant owners testified that he did not know that the property line was so located as to place half of the walk and well on his property. Defendant Comer says he always thought it was all on the other property. Defendant Gillespie says he never lived in the property, took it for a debt, and always rented it out; that he never repaired the property except to put a new roof on the house at one time, and paid no attention whatever to the well or walk leading to it. There was comparatively little common use of the well in later years by the respective occupants of the two houses or of the walk leading to it. The facts suggest that this well (cistern) was constructed when water was needed for domestic use at both houses by the then common owner, but that when city water was available it ceased to be a matter of importance to either separate owner. Other facts, if found important, may be mentioned in the course of the opinion.

The trial court held that under the pleadings and undisputed facts of the case the defendants could not be held liable for negligence causing the death of plaintiffs' child. This is the only question for review here. In considering this question plaintiffs insist that although the two lots were owned by separate owners, yet, as both derived title from a common owner who had constructed the common walk and well for the use of both houses, this common use continued as a matter of right, after the property was divided, in favor of the

respective owners and occupants. The plaintiffs regard the walk commencing at the front sidewalk and continuing along the property line as constituting a common walk to and including the well covering where it divides and connects by separate walks to the rear of each dwelling. And so plaintiffs say that "the common walk constituted an easement by implication." Plaintiffs then assume, but cite no sustaining authority, that if this walk constituted an easement in favor of each landowner, then each and both were burdened with the duty to maintain the walk in a reasonably safe condition for use by those rightfully using it, and they were equally and jointly guilty of negligence in not doing so—a proposition the correctness of which we need not decide. Plaintiffs also assert that this duty to maintain the common walk, including the covering to the well, in a reasonably safe condition for the use of the tenants of each residence and their families, extends also to the guests of the respective tenants, as were this deceased child and its parents. If the premise of this proposition is correct, then the conclusion doubtless is correct also. [Bender v. Weber, 250 Mo. 551, 564; Marcheck v. Klute, 133 Mo. App. 280, 289; Peterson v. Smart, 70 Mo. 34; McGinley v. Alliance Trust Co., 168 Mo. 257, 263.]

As we have before said, no such easement is contained in or created by the conveyances of this property, and if such exists, it arises by implication from the conditions created by the common grantor. Plaintiffs say that if during the unity of ownership the owner of two properties uses and improves one for the benefit of the other in such manner as would give rise to a presumption that an easement existed if the tenements were held by different owners, then upon a conveyance severing the two properties as to ownership, an easement will be by implication granted to one and reserved to the other owner reciprocally. This rule, however, is limited in its application. The use which it is claimed results in the easement must be of a class which is in its nature continuous and apparent, and, what is important here, must be at least reasonably necessary to the enjoyment and use of the property claiming the benefit.

In 19 Corpus Juris 914, this is said: "Where the owner of an entire tract of land or of two or more adjoining parcels employs a part thereof so that one derives from the other a benefit or advantage of a continuous and apparent nature, and sells the one in favor of which such continuous and apparent quasi easement exists, such easement being *necessary* to the reasonable enjoyment of the property granted, will pass to the grantee by implication." And in case of a conveyance by the common owner of the different tracts at different times to different owners, this is said: "If the owner of an estate, part of which is quasi dominant and part quasi servient, aliens

the two portions to different persons, the respective alienees will take the portions granted to them burdened or benefited, as the case may be, by those rights in the nature of apparent and continuous easements which the previous owner had the right to attach to them. . . . However, to put the foregoing principles into operation it is essential that the easement should have been enjoyed by the former owner at the time of the sale; and it has been held that the alienee of the quasi-dominant portion is only entitled as against the alienee of the quasi-servient portion to such rights as are strictly necessary to the enjoyment of his estate. So when there has once been a severance of the unity of title by a conveyance of a portion of a tenement, the grantee of the residue can take nothing by implication except what may have been reserved by the grantor." And, speaking particularly of a right-of-way easement, this same authority, page 918, says: "In other cases it has been held that a grant of a right of way cannot be inferred merely from the fact that there is a way leading to the premises purchased, even though the grant of the land is with all privileges and appurtenances, for the use of the word 'appurtenances,' although appropriate in the conveyance of an existing easement, is not sufficient to create one where none exists. No implication of a grant of an easement arises from proof that the easement will be convenient in the occupation or use of the land granted, the foundation of the easement being necessity and not convenience."

This question has been settled in this State by the well considered case of Bussmeyer v. Jablonsky, 241 Mo. 681. In that case the common owner of two lots or tracts built a house on each and so constructed a covered hallway used as an entrance that it served the common use of the occupants of both buildings. After thirty years of such use the owner sold and conveyed the separate lots to different owners at different times. The owner of the lot and building first conveyed claimed an easement as to the use of such hallway for ingress and egress to and from his building. The court reviewed a large number of cases in other states, as well as textbooks, and says, page 703: "To summarize the cases we at least have the rule of 'reasonable necessity.' So that from the greater number of the cases outside of Missouri 'reasonable necessity' at least, is an element in an implied easement by grant." The court then points out that in Barrett v. Bell, 82 Mo. l. c. 114, and in Mulrooney v. Obear, 171 Mo. l. c. 619, this court approved the rule stated in Ogden v. Jennings, 62 N. Y. 526, as follows: "Easements exist as appurtenant to a grant of lands, and as arising by implication, only by reason of a necessity to the full enjoyment of the property granted. Nothing. passes by implication, or as incident or appurtenant to the lands

granted, except such rights, privileges and easements as are directly necessary to the proper enjoyment of the granted estate. . . . When the necessity ceases, the rights resulting from it cease. . . . A mere convenience is not sufficient to create or convey a right or easement, or impose burthens on lands other than those granted, as incident to the grant. In all cases the question of necessity controls.''

The language which the court then used in the Bussmeyer case with reference to the hallway in that case is applicable to the walk and the well in this case, to-wit: ''In the case at bar we cannot hold that the right-of-way in question is one even of reasonable necessity. . . . It was a matter of convenience, not necessity or reasonable necessity, to either. The rear ends of both lots were touched by this fifteen-foot alley. Whether the rule be one of absolute necessity makes no difference under the facts of this case. It is apparent that the plaintiff is seeking to hold this passageway in order to keep from establishing one over lot 9 of his own property.''. Either owner could have constructed a walk on his own premises, if such was not already the case, and if either had need of a well or cistern such as this was, it is not shown that the cost would be large. If, therefore, the plaintiffs' right to recover in this case is bottomed on the joint duty of both landowners to maintain the walkway and well covering in a safe condition for the persons using the same because of each having an easement over a strip of land belonging to the other for such use, then the case fails for lack of the supporting easement.

Moreover, an easement, being the mere right of a person to use for a definite purpose another man's land in connection with his own land, may from its very nature be abandoned at any time. No one, whether he be the other landowner or a stranger, can force anyone to continue the use of an easement. Here both landowners disclaim having any such easement and there is no evidence that either ever asserted any easement rights. It is, therefore, difficult to understand how these plaintiffs, being strangers to the title, can force either landowner to assume the benefits and burdens of such easement.

The plaintiffs and their deceased child were at most invitees or guests of the defendant Comer's tenant and stand in the shoes of such tenant as to any claim against the landlord. [Bender v. Weber, 250 Mo. 551, 564; Marcheck v. Klute, 133 Mo. App. 280, 289, and other cases cited, supra.] Also, as we understand plaintiffs, they fully recognize the rule that the landlord is not liable to the tenant or his guests and invitees because of defects in the rented premises; and, in the absence of a covenant or agreement to that effect, is not required to make repairs or keep the premises in a safe or suitable condition. No lia-

bility arises against the landlord for such failure except from some active wrongdoing and not from mere negligence. [Kohnle v. Paxton, 268 Mo. 463, 471; Bender v. Weber, 250 Mo. 551, 562, 564, and 567; McGinley v. Alliance Trust Co., 168 Mo. 257, 263; Ward v. Fagin, 101 Mo. 669, 673; Marcheck v. Klute, 133 Mo. App. 280, 290.]

The plaintiffs, however, invoke the exception to this rule which is well stated in 36 Corpus Juris, 213 thus: "A landlord who rents out parts of a building to various tenants, reserving the halls, stairways and other approaches for the common use of his tenants, is under an implied duty to use reasonable care to keep said places in a reasonably safe condition, and is liable for injuries to persons lawfully using those places for failure to perform that duty." Plaintiffs cite the cases of Fabel v. Boehmer Realty Co., 227 S. W. 858; Dierkes v. Dry Goods Co., 210 Mo. App. 142, 243 S. W. 269; McGinley v. Alliance Trust Co., 168 Mo. 257; Wilson v. Jones, 182 S. W. 756; Udden v. O'Reilly, 180 Mo. 650; Miller v. Geeser, 193 Mo. App. 1; and a multitude of cases might be cited. This duty and the landlord's liability for failure extends to the families, guests and invitees of the tenant. We also grant that the duty to maintain a passageway in safe condition carries with it the duty of inspection, as shown by Dalton v. John Maguire Real Estate Co., 221 S. W. 443, and Udden v. O'Reilly, supra.

It is apparent, however, that this principle is not applicable here. Neither of the defendant landowners is in the position of a landlord who rents portions of his building or tenement to a number of tenants, who have a common use of walkways, stairways, porches, etc., and the care and control of which necessarily or by usage remains in the landlord. Here neither landlord had more than one tenant and it cannot be said that either Gillespie, owner of the north lot, or Comer, owner of the south lot, in renting his premises retained care and control over a part used by his several tenants in common. Gillespie rented his entire premises to his one tenant and retained control of no part of it, and Comer did the same except for the use of one room, not important here. There was no such thing as a common landlord of several or even two tenants.

The most that can be said as to either defendant Gillespie or Comer is that each of them, as owner of a separate and distinct half of the walk and covering to the well, rented the premises of which this half was a part in a defective and unsafe condition to his individual tenant or allowed the same to become in that condition after such demise. While it is somewhat incongruous to do so, we may thus view and determine the liability of each defendant from this standpoint and as if each, or

rather either one separately, maintained the walk and well in such defective and dangerous condition wholly on his premises. In such case, however, there is no liability on the landowner for the reason that the premises were in the exclusive possession of the tenant. The liability, if any, would be that of the tenant and not the landlord. Except in cases of concealed defects not easily discovered, but known to the landlord and which he ought to disclose (Bender v. Weber, 250 Mo. 551, 562), the landlord is not liable to his tenants or their invitees for renting premises not in a safe condition. Nor, in the absence of a covenant in the lease or a collateral agreement to do so, is the landlord liable, as we have seen, to his tenants or their guests or invitees for a failure to make repairs or keep the demised premises in a safe condition. [Byers v. Essex Inv. Co., 281 Mo. 375, 381; Meade v. Montrose, 173 Mo. App. 722, 724; Glenn v. Hill, 210 Mo. 291, 296; Bender v. Weber, 250 Mo. 551, 562, 564, and other cases heretofore cited.]

In Bender v. Weber, 250 Mo. 551, 564, this is said: "The record shows beyond all question that the outside stairway at the rear of the grocery passed to the Woods [tenants] by their lease. The owners reserved no control whatever over it. So, the exclusive control of the access to this stairway from the courtyard, or from the rear door of the grocery passed to them with their demise, together with the preclusive right to use that rear door and way of access. These defendants (the owners) had no right to intermeddle or interfere with that use or access and were not charged with any duty under the law to make that use safe to their tenants or such customers as were invited or permitted by them to make use of it in entering or leaving the store. The lessees took it as they found it, for better or worse. As to the invitees of the tenants, they stood in the shoes of the tenants and had no greater rights against the owner. 'In such a case the guest can have no greater claim against the lessor than the lessee himself and the members of his family have.' [McKenzie v. Cheetham, 83 Me. l. c. 550.] The doctrine of *caveat emptor* applies in such cases and if any third persons are injured in the use of it on their invitation or permission, the tenants in control, and not the owners out of control, are liable. Such injured parties must look to those who invited them, not to those who had no hand in doing so. May A not rent to B a tenement in a known tumbled-down condition without being liable to B's invitees? . . . It is plain that to rule as respondent wishes us to would be to let in a flood of strange and deep water for the landlord to struggle with. Fortunately it is not so written in the law."

In this case the walk in question, including the covering to the well, was in no sense a public walk provided for the use of the public in general and which all who desired were invited to use. It was at most a private walk on private property for the benefit of the occupants of the premises and their families, servants, guests and invitees. Cases such as St. Gemme v. Osterhaus, 220 Mo. App. 863, 294 S. W. 1022, cited by plaintiffs, and dealing with the liability of landowners or tenants who maintain pitfalls or obstructions in sidewalks or other public ways, or so near thereto as to endanger users thereof, are not applicable. Meade v. Montrose, 173 Mo. App. 722, 725; and Bender v. Weber, 250 Mo. 551, 561, where it is said: ''The courtyard was in no just sense a public highway but was private inclosed ground devoted to the convenience of defendants' tenants and tenements and no express or implied invitation was extended to the general public to use it as a highway.''

We must also disregard as inapplicable another line of cases based on what are termed attractive nuisances—that is structures or conditions which are not only dangerous in themselves but also attract and lure into such danger children, and the like. Such are sometimes classed as turn-table cases. [Marcheck v. Klute, 133 Mo. App. 280, 290; Rallo v. Heman Const. Co., 291 Mo. 221; Kelly v. Benas, 217 Mo. 1.] The cause of action stated in this petition is not based on any such theory, nor does the evidence sustain same.

We think, therefore, that the learned trial judge ruled well in this case, and the judgment is affirmed. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.