Marie FOSTER, Plaintiff-Respondent,

v.

Betty D. LABA and Jack F. Brune,
Defendants-Appellants.

Nos. 32222, 32223.

St. Louis Court of Appeals.

Missouri.

April 19, 1966.

Schwartz & Ely, Robert C. Ely, St. Louis, for defendant-appellant, Betty D. Laba.

Sigoloff & Sigoloff, J. E. Sigoloff, St. Louis, for defendant-appellant, Jack F. Brune.

James F. Koester, Jack C. Harper, St. Louis, for plaintiff-respondent.

TOWNSEND, Commissioner.

Action for damages for personal injuries sustained as a result of stepping into a defective porch flooring. Verdict and judgment for plaintiff for $10,000 against both defendants, from which each appeals.

Plaintiff was a second-floor tenant of defendant Brune in a two-story building, the south one-half of which was owned by Brune and the north one-half by defendant Laba. Each half had an apartment on the first floor and one on the second. A hallway ran down the center of the first floor from front to rear, and at the rear end of the hallway one reached an outside stairway which furnished the only means of access to the second floor. At the top, the stairway gave onto a porch which led both to right and to left. The porch was completely open from plaintiff's apartment to the apartment in the north half of the building; there was no barrier on the porch which would have marked the separation of the southern half from the northern half. When plaintiff moved into the premises there was a clothesline which ran the length of the porch and plaintiff used it not only on her side of the porch but also on the north half of the porch. Plaintiff's injury occurred when she was sweeping the porch on that portion thereof belonging to defendant Laba. As she was sweeping she stepped into a readily observable hole in the floor about ten inches by three or four inches in dimension, through which one could see to the ground below. As a result she was thrown to the floor of the porch with the consequent injuries about which she testified. Plaintiff knew of the existence of the hole and had called it to the attention of her rent collector.

Plaintiff explains her presence, sweeping, on that part of the porch belonging to defendant Laba in this way: There was a sign across the front of the building at the hallway with the lettering: "Brune's Real Estate". She rented her apartment and paid the first month's rent at the office of Brune Real Estate in October or November, 1959. From that time on rent was paid monthly to a rent collector who called at the apartment and who told her that he was employed by Brune Realty Company. There was some conversation with this man (not identified further) at the time plaintiff rented the apartment at the office of Brune Real Estate, concerning the cleaning of the porch.

Plaintiff's testimony regarding her conversation with the alleged agent of Brune was as follows:

"Q. Now, what did you say this man told you [at the time when plaintiff rented her apartment at the Brune office]?

A. I told him that there was a lot of trash on the porch and that the rooms were all empty, open, and that the rooms I was to move in had a lot of trash in them, cans, bottles, and such as that, and he said to clean it up, if I would clean it up, take the trash off the porch and clean the trash out of the rooms, that he would give me a month's rent, and to put locks on the doors, because they was open, and people was going in and out, and I was alone, and I was afraid to be there by myself with the doors all open.

Q. Now, this was the only conversation you had relative to the cleaning of the premises; isn't that correct?

A. Well, and then when the gentleman come to the house to collect the rent,

the elderly man, then he told me again to clean the trash off of the porch, and also that was on the other side, and to sweep them down. And that's what I was doing when the accident happened."

In other testimony the plaintiff dated the last mentioned conversation as of about February 10; when asked what portions of the property the alleged agent wanted cleaned in that conversation, she answered: "He told me all of it, the downstairs and up, that was empty." (Q) "Clean the downstairs apartment?" (A) "That's right. And the upstairs." (Q) "And the upstairs. This also included your apartment, or—?" (A) "Yes, sir." (Q) "All right. Now, did he mention anything specifically about the porch?" (A) "He said, all of it. He didn't exactly say just which part; he said, all." (Q) "He said all?" (A) "That's right." (Q) "And did you take that to mean the whole porch?" (A) "Yes."

According to plaintiff's testimony, a period of approximately four months elapsed between the two conversations. No effort was made by counsel to determine whether the original cleaning job had been completed in the interim, or whether there had been any remission of rent in that period. It may be open to question whether the two conversations referred to the same clean-up. In any event counsel utilized this testimony solely for the purpose of advancing the argument that the two defendants maintained a porch in common for the use of tenants of both. Plainly the testimony could not possibly tend toward any conclusion that Laba participated in the maintenance of a common porch; there is no evidence that Laba had any connection with Brune Real Estate office or with the rent collector.

Plaintiff had no instruction not to use any particular part of the porch. At the time of her accident the upstairs apartment on the Laba side of the building and the downstairs apartment on the Brune side (directly beneath plaintiff's apartment) were unoccupied. No evidence was offered

as to any prior practice relating to uses of the porch. Neither was there any evidence as to the derivation of title by either defendant.

Plaintiff testified that she had never had any relationship by way of rental with Betty Laba or even any conversation with her; that she had never heard of Laba before the lawsuit. Neither defendant offered any testimony; each filed a motion for a directed verdict which was denied.

By her petition plaintiff alleged that the defendants "maintained a common stairway and porch for access and use of persons living on the second floor," that plaintiff's injuries occurred while she was walking on the common porch and that they resulted from the joint and concurrent negligence of both defendants. Plaintiff's verdict directing instructions followed the same theme of a common porch way, "available and intended for the use of persons occupying both apartments" and "used jointly in common by tenants" of both defendants, and imposed liability upon each defendant if each failed to exercise ordinary care in knowing of the defect in the floor and in failing to repair.

■ There is no evidence of a common enterprise of defendants or of a common maintenance of the porch by them. And so there is no evidence to sustain the hypothesization of a common porch way or that the porch was intended for the use of all persons occupying second-floor apartments. To say that Laba owned and maintained the north one-half of the porch for the accommodation of a tenant of Brune who occupied the south one-half of the second floor—and vice versa—would be going wholly outside the record. There is no doubt that the stairway was maintained in common, since, because of the narrowness of the stairs, any tenant proceeding to the second floor could not avoid treading on both sides of the imaginary line separating the north property from the south property. But no injury occurred on the stairs. The only speculation about maintenance in

common of the porch that could conceivably be indulged in is one which would rest on the fact that the porch was open from end to end without a barrier at the dividing line of the two properties. But that would be pure speculation and one cannot derive maintenance in common from the mere unimpeded openness of the porch. While it is true that anyone on the second floor had the physical ability to pass without interruption from one end to the other, one cannot deduce from that fact alone that anyone passing from one end to the other had a legal privilege to do so. There is no evidence that either landlord possessed an easement to pass over the premises of the other. It was testified by plaintiff that when she arrived at that point on the stairway where it debouched upon the porch, she had to take a step or two onto Laba's side of the porch before she could turn and proceed to her apartment. If there was anything here in the nature of an easement by implication it was confined to the use of that very limited part of Laba's porch and did not extend farther. There is no showing that use of that area of Laba's porch where the accident occurred was necessary to plaintiff's enjoyment of the premises which she had rented. It follows that there was no evidentiary basis for the instruction to the jury relating to a common porch way intended for the use of persons occupying both apartments and used jointly in common by tenants of both defendants.

■ From all the evidence that is before the Court the plaintiff cannot be denominated as anything other than a trespasser upon Laba's porch. To trespassers the owner of real estate owes no duty to keep his premises in a safe condition. Butz v. Cavanagh, 137 Mo. 503, 38 S.W. 1104. It is thus clear that, not only was there no evidence upon which to base the instruction in relation to Laba, the case against Laba should never have been submitted to the jury. Laba's motion for a directed verdict should have been sustained.

As previously stated, counsel endeavored to utilize plaintiff's testimony for the sole purpose of advancing the contention that the two defendants maintained a porch in common for the use of tenants of both. Absent Laba, the contention of common maintenance fails and so failing it leaves Brune alone in the picture. The plaintiff has in no wise maintained that Brune is liable to plaintiff on some theory of inducing her to work in an unsafe place or that some other kind of unspecified tort were perpetrated on her thereby.

■ Plaintiff's brief has been devoted chiefly to "reservation of control by defendants" of the stairway and porch. This results in a confusion of concepts, since joint or common control of the stairway did not involve common control of the whole porch. That matter has already been passed upon. But to speak of "reservation of control" at all brings into consideration another concept not relevant in the present circumstances, namely, that rule in landlord-tenant cases known as the "common use" rule whereby a landlord who provides facilities for the common use of two or more tenants is deemed to remain in control of those facilities and can be held responsible for injuries resulting from lack of proper care. If "reservation of control" was intended to mean common control of the whole porch by both landlords, we have already stated that there was no evidence to sustain that allegation; if "reservation of control" was uttered for the purpose of invoking the "common use" rule so briefly outlined above, such utterance was misconceived. Here there was no issue involving the common use rule. Neither defendant had more than one tenant, "and it cannot be said that either * * * in renting his premises, retained care and control over a part used by his several tenants in common." Mahnken v. Gillespie, 329 Mo. 51, 43 S.W.2d 797. The prime issue was whether two landlords provided

facilities in common for the several uses of tenants of both.*

 If the defect in the floor here had been in Brune's part of the porch, he would not have been liable to plaintiff because of failure to keep the porch in repair. "No liability arises against the landlord for such failure, except from some active wrongdoing, and not from mere negligence," in the absence of a covenant to repair. Mahnken v. Gillespie, supra. Such being the rule one can find no basis for the proposition here that the landlord owes his tenant a duty to keep the premises of a third person in repair. Among other things, a duty to repair rests upon the privilege of inspection and here we have no showing that Brune had the privilege of entering upon Laba's premises. In the absence of any evidence concerning the conveyances by which present titles were acquired we cannot speculate that Brune had an easement by implication over Laba's porch which would cast upon him as owner of the dominant estate the duty of keeping her porch in repair. Cf. Swingler v. Robinson, Mo.App., 321 S.W.2d 29.

■ For the reasons previously stated, the instruction hypothesizing a common porchway, available and intended for the use of persons occupying both apartments, was not based on any evidence produced at the trial and was erroneous as to Brune as well as to Laba. The record discloses no other basis for holding Brune liable to plaintiff and his motion for a directed verdict should have been sustained. The conclusions to which we have come render it unnecessary to consider the question of plaintiff's contributory negligence.

The judgment should be reversed and the cause remanded to the Circuit Court with instructions to enter judgment in favor of each defendant.

---

\* For this reason the case of Peterson v. Brune, Mo., 273 S.W.2d 278, cited by both parties and relied upon by plaintiff, is not in point. In that case one landlord and two or more of his tenants

PER CURIAM:

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly the judgment is reversed and the cause remanded to the Circuit Court of the City of St. Louis, with instructions to enter judgment in favor of each defendant.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.

were involved and the "common use" rule was applied. The same lack of pertinency is found in Schneider v. Dubinsky, 344 Mo. 654, 127 S.W.2d 691.