# BECHER, Appellant, v. DEUSER.

### Division One, June 18, 1902.

1. **Judgment:** AMENDMENT NUNC PRO TUNC: STENOGRAPHER'S NOTES. Stenographer's notes do not constitute a paper or file which can be the basis of an amendment of a judgment *nunc pro tunc.*

2. ———: ———: MEMORANDUM OF ATTORNEY. Oral testimony of what was contained in a written memorandum prepared by the attorney for the prevailing party and handed by him to the clerk as the basis for the judgment, and by the clerk lost, affords no basis for amending a judgment in accordance with the memorandum at a subsequent term of court, first, because it is no part of the records of the case, and, second, because, if a record, and if lost, it can be supplied only in the way pointed out by statute, and that is by a separate proceeding.

3. ———: ———: REFUSAL OF TRIAL JUDGE. Appellate courts must have clear and convincing legal and proper evidence that the trial judge has violated his duty or acted arbitrarily, before it will overrule his judgment refusing to amend a judgment *nunc pro tunc.*

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED.

*George W. Lubke, Jr.*, for appellant.

(1) An erroneous judgment may be corrected by the court rendering it, at any time, whether before or after the close of the term at which it is rendered, provided sufficient memoranda exist in the minutes of the judge, or in the record or files of the case by which to correct the erroneous entry, which has been the result of a clerical mistake or misprision. Railroad v. Holschlag, 144 Mo. 253; Gamble v. Daugherty,

71 Mo. 599; Evans v. Fisher, 26 Mo. App. 546; Farley v. Cammann, 43 Mo. App. 168.    (2)    The notes of the official stenographer are a sufficient minute of the judgment actually rendered by which the judgment may be corrected.    Sullivan v. Eddy, 154 Ill. 199; Padgit v. Moll, 159 Mo. 155; R. S. 1899, secs. 10105, 10106.    (3)    The memorandum of plaintiff's attorney, filed with the clerk, describing the property for the possession of which the court rendered judgment, the contents of which, on account of the loss of the original, being supplied by secondary evidence, is such memorandum in the files of the cause as will authorize the correction of the judgment. Saxton v. Smith, 50 Mo. 490; Belkin v. Rhodes, 76 Mo. 643.

*Theo. H. Culver* for respondent.

(1)    A judgment can not be corrected by the court after the expiration of the term in which it was rendered.    Railroad v. Holschlag, 144 Mo. 253.    (2)    A clerical error in transcribing a judgment can not be corrected after the expiration of the term in which it was made unless there is matter of record to warrant it.    It is presumptively the judgment of the court.    Gamble v. Daugherty, 71 Mo. 599; Railroad v. Holschlag, supra; Belkin v. Rhodes, 76 Mo. 650.

MARSHALL, J.—This is an appeal by the plaintiff from a refusal of the circuit court to amend a judgment in ejectment at a term subsequent to that at which the judgment was rendered.

The petition was in the usual form, and the property described as follows: "that certain piece or parcel of land in the city of St. Louis, fronting on Ivory avenue, in block No. 3143, of said city, and being the southern one foot, six and one-half inches of lot number five, of block number thirty-three, of survey number three of Carondelet, by John C. Ivory."    The answer was a general denial.

The case came on for trial at the October term, 1899, on November 22, 1899. The defendant did not appear. The plaintiff adduced his evidence and the court entered a judgment for the plaintiff describing the premises as follows: "A part of lot 5 of block 33, of survey No. 3, of Carondelet, by John C. Ivory, and in City Block No. 3143, beginning at the intersection of the south line of said lot, with the east line of Ivory avenue," * * * * [These asterisks do not appear in the judgment but are placed there herein to pointedly call attention to the alleged clerical error in the judgment which it is sought to correct, *nunc pro tunc,* by inserting a call in the description which it is claimed was omitted by the misprision of the clerk] "one foot, six and one-half inches to a point, thence in a direct line towards the south line of said lot to a point in said south line sixty-one feet east of its intersection with said line of Ivory avenue, thence westwardly along said south line sixty-one feet to the point of beginning."

On the twenty-second of March, 1900, at the February term, 1900, the plaintiff moved to have the judgment amended, *nunc pro tunc,* by inserting at the place in the judgment marked with asterisks, the words, "thence northwardly along the east line of Ivory avenue."

In support of this motion the plaintiff proved, orally, by the clerk of the court that he entered the judgment from a memorandum which the plaintiff's attorney had furnished him for the judgment, and which, as is customary, he placed with the papers in the case, but which he had been unable to find, and that he endeavored to follow the memorandum. Counsel for plaintiff then testified orally that at the close of the trial, with a plat before him, he prepared the memorandum for the judgment, and gave it to the clerk, and that it was exactly as the judgment was entered, with the exception that it contained the words sought by this motion to have inserted at the place where the asterisks appear, to-wit, "thence northwardly along

Vol. 169 mo—11

the east line of Ivory avenue." Plaintiff then showed by the notes of the official stenographer of the court that at the close of the plaintiff's case the court said: "You may take judgment for possession of the property, one foot six and one-half inches, running to a point in the south line of lot 6, sixty-one feet from the front of the lot."

Upon this showing the circuit court overruled the motion to amend the judgment and the plaintiff appealed.

I.

The plaintiff asked in his petition to recover a parallelogram, or rather, a rectangle, fronting one foot six and one-half inches on the east side of Ivory avenue, and being the southern one foot six and one-half inches of lot five of block thirty-three of survey number three of Carondelet by John C. Ivory. The depth of the lot is not given, and could only be ascertained by reference to the survey and plat.

The judgment as entered follows the description of the petition as to the lot, block and survey number, and then instead of following the further description in the petition, undertakes to describe the land by metes and bounds, with the result that it amounts to absolutely nothing, because it starts at the intersection of the south line of lot five with the east line of Ivory avenue, then says, "one foot six and one-half inches to a point," without saying whether that course was north, south, east or west from the initial point, and then describes the next course as "thence in a direct line towards the south line of said lot to a point in said south line sixty-one feet east of its intersection with said Ivory avenue, thence westwardly along said south line sixty-one feet to the point of beginning." This description, therefore, starts at the intersection of the south line of lot five with the east line of Ivory avenue, runs east to a point in the south line of lot five, distant sixty-one feet from the point of intersection, the initial point,

and then back along the same line to the place of beginning. The call, "one foot six and one-half inches to a point," is, therefore, perfectly meaningless, and the effect of the judgment is to give the plaintiff judgment for a line of no width extending eastwardly sixty-one feet.

The proposed amendment would give the plaintiff a triangle fronting one foot, six and one-half inches on the east line of Ivory avenue, and extending eastwardly to a point in the south line of lot five.

Such a judgment as the stenographer's notes show the court directed to be entered would be almost as meaningless and useless as the judgment that was actually entered. For it simply describes the property as "one foot six and one-half inches running to a point in the south line of lot 6, sixty-one feet from the front of the lot." It will be observed that no initial point is described; the one foot six and one-half inches are not described as fronting on the east line of Ivory avenue, and in fact are not so described as to make its location ascertainable; lot five is nowhere mentioned in the memorandum, but on the contrary, the only course given in the stenographer's notes is "running to a point in the south line of lot 6, sixty-one feet from the front of the lot." It is not stated where it is to run from or where it is to go from the point to which it is to go. It is stated that it is to run to a point in the south line of lot *six,* sixty-one feet from the front of the lot, when lot six is nowhere mentioned in the petition and there is nothing in the record to show where lot six is located, whether north or south of lot five.

The stenographer's memorandum, even if it was such a paper as would afford the basis for an amendment *nunc pro tunc,* would not help the plaintiff at all, but, if true, would show that the motion to amend ought not to be sustained, because it would call for some indefinite, unascertainable property, in lot *six,* while the petition only asks for the possession of a rectangle fronting one foot six and one-half inches on the

east line of Ivory avenue, being the southern part of lot *five.* The judgment if entered according to the stenographer's notes would therefore be for property not in suit in this case.

But the stenographer's notes do not constitute a paper or file in the cause which can be made the basis of an amendment of a judgment *nunc pro tunc.* The plaintiff relies upon the case of Sullivan v. Eddy, 154 Ill. 199, as authority for his contention that the stenographer's notes do afford such a basis. It is true that it is so stated in that case, but at the same time it is worthy of note that the court did not predicate its ruling solely or even materially upon the stenographer's memorandum, for in addition thereto the court says that the judge's memory conforms to the stenographer's notes, and winds up with the most significant statement and demonstration that there was enough in the record in the case to afford a basis for a *nunc pro tunc* entry without the stenographer's notes or the judge's memory.

But whatever may be the rule in other jurisdictions, this court, in Padgitt v. Moll, 159 Mo. l. c. 155, after referring to the fact that the stenographers are officers of court and that their official notes are required to be deposited with the records of the court (not as a paper or even a file in the case, however), pointed out that such notes do not constitute a part of the records in the case, and can not become a part of the case for any purpose whatever until they are transcribed and pass into a bill of exceptions, and that their correctness is not proven by the attestation of the stenographer but by the certificate of the judge.

So that the stenographer's notes did not afford a basis for a *nunc pro tunc* entry. They could only serve to refresh the memory of the stenographer so as to enable him to testify orally what the order was, or to aid the memory of the judge in that behalf. But in this State it is not admissible to make a *nunc pro tunc* entry based upon any amount of oral testimony, nor upon the memory of the judge. Such entries can

only be made "upon evidence furnished by the papers and files in the cause, or something of record, or in the minute book or judge's docket, as a basis to amend by." [Railroad v. Holschlag, 144 Mo. l. c. 256; Young v. Young, 165 Mo. l. c. 630.]

This leaves nothing to amend by except the oral testimony as to what the memorandum, furnished by the plaintiff's attorney to the clerk, for the judgment showed. There are two reasons why this is not sufficient: first, because such memorandum does not constitute a part of the papers or files in the case which are covered by the rule, in that such memorandum is made by the attorney and not by the court nor even seen nor approved by the court, and is only the attorney's understanding of the judgment ordered by the court to be entered, and in that it is not any paper which is required to be filed by law, and like the stenographer's notes could only become a part of the record by being embodied in a bill of exceptions and certified as such by the judge; and, second, even if such memorandum was a part of the papers or files in the case, there is no such memorandum disclosed by this record. It is shown to be lost. Its contents are attempted to be shown by parol, as if it was a mere lost instrument. This can not be done. If it is a part of the records in the case, and is lost, the procedure pointed out by the statute (section 4560, et seq., R. S. 1899) for establishing and supplying lost records, must first be pursued and the lost record re-established, and then the re-established record can be used as a basis for a *nunc pro tunc* entry. But upon a motion for such an entry it is not competent for the plaintiff to show that the record is lost, then show by parol what that lost record contained, and thus secure a *nunc pro tunc* order. Such a procedure would be an amendment of a judgment by a *nunc pro tunc* order based upon parol testimony. If it is not competent for the judge to make such an order from his memory of what he ordered to be done, it surely is not competent for any one else to testify

what the judge ordered to be done and for such other testimony to give the judge power to do what he could not do from his own memory.

But aside from all these considerations, the judge in this case has refused to make the entry, and this court should and will pay great deference to his ruling in such matters. It would have to be clearly and convincingly shown that the judge had violated his duty and acted arbitrarily and in the face of legal and proper evidence, afforded by the papers and files in the cause or something of record or in the minute book or judge's docket, before an appellate court would require such an entry to be made when the trial judge, whose judgment is sought to be corrected, had refused to do so.

There is no proper evidence or subject of reference in this case affording a basis to amend the judgment by a *nunc pro tunc* order. Therefore, the judgment of the circuit court is affirmed. All concur.