ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1915.

---

*(Continued from Volume 192.)*

---

BENJAMIN MILLER, by next friend, Respondent, v.
MORRIS GEESER, Appellant.

St. Louis Court of Appeals. Argued and Submitted October 6, 1915. Opinion Filed November 2, 1915.

1. LANDLORD AND TENANT: Injury to Tenant: Common Use of Premises: Liability of Landlord. A landlord of an apartment house is responsible for accidents occurring to one of his tenants, or a member of his family, or a guest, irrespective of the age of the person injured, as a result of his negligent act in failing to keep in repair that portion of the premises open to the common use of the tenants of the several apartments, whether he had actual knowledge of the condition or whether the defects were such as to have charged him with notice thereof, and regardless of whether the testimony shows a specific reservation of control by him or whether such reservation may be implied from the common user.

2. ——: ——: ——: Sufficiency of Evidence. In an action against a landlord for injury to a tenant's child as a result of falling through a hole in the railing of a second-story porch, evidence *held* sufficient to warrant a finding that the porch was used in common by the family of which the child was a member and another family living in an adjoining apartment owned by the landlord and that the defect had been brought to the landlord's attention prior to the accident, and hence it is *held* that the case was one for the jury.

3. APPELLATE PRACTICE: Conclusiveness of Verdict. A verdict rendered on conflicting evidence is conclusive, on appeal.

4. LANDLORD AND TENANT: Injury to Tenant's Child: Notice of Defect: Evidence. In an action in tort against a landlord for injury to a tenant's child as a result of falling through a defective railing of a porch which was used in com-

mon by several tenants, including the child's parents, evidence of an agreement by the landlord to repair was admissible for the purpose of showing his knowledge of the existence of the dangerous condition.

5. **APPELLATE PRACTICE: Trial Practice: Order of Receiving Evidence: Review.** The order of the introduction of testimony is so largely within the discretion of the trial court that the appellate court will not interfere therewith, except in case of abuse of such discretion: and, in this case, it is *held*, that, although the testimony objected to should have been introduced in chief, it was not an abuse of discretion for the trial court to admit it in rebuttal.

6. **EVIDENCE: Stenograhic Notes of Former Trial.** Testimony of a witness, since deceased, given in a previous trial of the same suit, taken down in shorthand by the official court reporter, and admittedly correctly transcribed, is admissible, even if not embodied in a bill of exceptions.

7. **LANDLORD AND TENANT: Injury to Tenant's Child: Instructions.** In an action against a landlord for injury to the child of a tenant, sustained in falling through a defective railing of a porch which was used in common by several tenants, by reason of the landlord's negligent failure to repair the same, *held* that an instruction given for plaintiff was not objectionable as submitting a theory of negligence not counted on, nor as ignoring defendant's claim that the child fell over the top. of the railing from a chair, in view of the fact that such defense was distinctly presented by other instructions.

8. ————: ————: **Evidence: Knowledge of Agent.** In an action against a landlord for injuries to the child of a tenant, sustained in falling through a defective railing of a porch which was used in comon by several tenants, it was not error to exclude the testimony of the landlord's agent that he had no knowledge of the defect in the railing, where the landlord himself knew, or had reasonable cause to know, of the defect and plaintiff did not seek to establish that the agent had such knowledge.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin, Judge.*

Affirmed.

*Thos. E. Mulvihill* and *R. M. Nichols* for appellant.

(1) The defect complained of did not occur after the letting; it was patent; there was no concealment by the landlord; it was known to the tenant before and at the time she rented the premises, to-wit,

March 15, 1911, according to her own testimony.. She therefore took the apartment in that condition, and the child having no greater rights, cannot recover. Upon the tenant's own testimony the peremptory instructions should. have been give. Bender v. Weber, 250 Mo. 551.; Quinn v. Perham, 151 Mass. 162, 23 N. E. 735.; Moynihan v. Allyn, 162 Mass. 270, 38 N. E. 497; Freeman v. Hunnewell, 163 Mass. 210, 39 N. E. 1012; Andrews v. Williamson, 162 Mass. 270, 78 N. E. 737; Phelan v. Fitzpatrick, 188 Mass. 237, 74 N. E. 326; Hedekin v. Gillespie, 33 Ind. App. 650, 72 N. E. 143; Shackelford v. Coffin, 95 Me. 69, 49 Atl. 57; Daly v. Quick, 99 Cal. 179, 33 Pac. 859; Town v. Armstrong, 75 Mich. 380, 42 N. W. 983; Mullen v. Rainier, 45 N. J. L. 520; Rampinsky v. Hallo, 23 N. Y. S. 114; Humphrey v. Wait, 22 U. C. C. P. 580; Ryan v. Wilson (1882), 87 N. Y. 471; Ames v. Brandvold, 119 Minn. 521, 138 N. W. 786. (2) There being no express reservation shown, the law implied a reservation extending only to the parts and places actually used by the tenants for their necessities in the use and occupation of the tenement; the stairs and part of the porch of sufficient width to admit of a means of ingress and egress and the railing around the stairs were by the law reserved to the landlord, but the part of the porch naturally segregated to the Weinberg apartment where the accident happened, was not necessary for the use and enjoyment by the Millers of their apartment and was no advantage to the landlord, and the permissive use in common by the tenants would not make such a reservation; the defect in the railing or upright ten feet from the common passageway was not a part of the common passageway. Without some evidence of a special reservation by the landlord of the Weinberg porch for use of both families, the plaintiff did not make out a case. The case should not have been submitted to the jury. Bender v. Weber, 250 Mo. 551; McGinley v. Alliance Trust Co., 168 Mo. 257;

Maionica v. Piscopo, 217 Mass. 324, 104 N. E. 839; Kearines v. Cullen, 183 Mass. 298, 67 N. E. 243; Phelan v. Fitzpatrick, 188 Mass. 237, 74 N. E. 326; Flaherty v. Nieman, 125 Ia. 546, 101 N. W. 280; Saunders v. Smith Realty Co., 84 N. J. L. 276, 86 Atl. 404. (3) Granting that a landlord owes to his tenant's family a duty, arising under the law, to maintain the appurtenances used in common in a reasonably safe condition, and that such member of the family may sue in tort for a violation of this obligation, the landlord does not owe any greater duty to the member of the family than to the tenant himself. The opening of seven or eight inches was a reasonably safe condition so far as concerned the tenant himself or herself, because their bodies would not fall through such aperture, and as to them it was not unsafe. The plaintiff cannot recover unless he can show that condition was unsafe to the tenant. McGinley v. Alliance Trust Co., 168 Mo. 257, 56 L. R. A. 334; Marcheck v. Klute, 133 Mo. App. 281; Domenicis v. Fleisher, 195 Mass. 281, 811 N. E. 1191; Miles v. Janvrin, 196 Mass. 431, 82 N. E. 708. Eyre v. Jordon, 111 Mo. 424. (4) The landlord would not be liable in an action of tort upon an express contract to repair, the breach of which resulted in injury to the tenant. It must follow that in an action of tort, by a member of the tenant's family, for a breach of an obligation arising under the law, testimony that the defendant promised or agreed with the tenant to fix the porch was wholly inadmissible in this form of action and was prejudicial before the jury. Graf v. Brewing Co., 130 Mo. App. 618; Marcheck v. Klute, 133 Mo. App. 281; Graf v. Brewing Co., 145 Mo. App. 364; Korach v. Loeffel, 168 Mo. App. 414; Bailey v. Vogel, 187 Mo. App. 261; Glenn v. Hill, 210 Mo. 291. (5) The stenographic notes of the deceased witness' testimony was neither a deposition nor was it preserved in a bill of exceptions. It was not admissible. Padgett v. Rail-

way, 159 Mo. 143; Beecher v. Deuser, 169 Mo. 163; Greenleaf on Evidence, sec. 437; Jones on Evidence (2d Ed.), sec. 343. (6) The petition avers that the plaintiff fell through the opening. The general instruction given for the plaintiff advises the jury that they should find for the plaintiff if the defendant failed to repair, regardless of whether he fell through the opening, or climbed up and fell over the balustrade, or fell from the porch at all. The direction that the jury must find "that the injury to the plaintiff was directly caused by the negligence of the defendant in this respect" (i. e., negligence in failing to repair), does not confine the jury to the finding that plaintiff fell through the opening. The instruction is broader than the averment of the petition, and ignores the evidence that the plaintiff climbed on the chair and fell over the balustrade, which was a part of the defense. Chink v. Westerman, 80 Mo. App. 592; Veabe v. Transit Co., 112 Mo. 351; Thomas v. Babb, 45 Mo. 386; Fitzgerald v. Hayward, 50 Mo., 523; Price v. Barnard, 70 Mo. App. 180; Wood Mch. Co. v. Babst, 56 Mo. App. 433; St. Louis Packing Co. v. Mertens, 150 Mo. App. 583; Walton v. Phoenix Ins. Co., 162 Mo. App. 316; Barr & Martin v. Johnson, 170 Mo. App. 403; Winfield v. Railroad, 257 Mo. 347; Enlow v. Cur. & F. Co., 240 Mo. 443; Hale v. Coal & Coke Co., 260 Mo. 367; Tagler v. White, 158 Mo. App. 330. (7) This general instruction is in conflict with the instructions given for defendant in that it authorizes the jury to find for the plaintiff whether the child climbed upon the chair and lost his balance and fell over the top of the railing to the ground beneath, or not, as shown by instruction No. 7 given for defendant. Bluedorn v. Mo. Pac. Ry. Co., 108 Mo. 449; Kelly v. United Ry. Co., 153 Mo. App. 114; Ridpath Bros. v. Lawrence, Manning & Cushing, 42 Mo. App. 112. (8) The general instruction for the plaintiff required the jury to find that Morris Geeser knew, or by the exercise of ordinary care should have

known, of the broken or defective condition of the porch. To recover for injury received from a defective condition of premises, used in common, the burden is on the tenant injured to show that the landlord knew of the defect, or by the exercise of reasonable care should have known same; and yet the court refused to allow the defendant by his witness Manhart to show that no notice was ever given to him, as agent of defendant. Udden v. O'Reily, 180 Mo. 650; Lynch v. Swan, 167 Mass. 510, 46 N. E. 51; Idel v. Mitchell, 158 N. Y. 134, 52 N. E. 740.

*Sale & Frey* for respondent.

(1)     (a) In this State the rule is that, with respect to those portions of a building or tenement, either expressly or impliedly reserved by the landlord, such as porches, stairways and court yards, the landlord owes to his tenants the duty of exercising reasonable care to maintain such common portions in a reasonably safe condition for the use of the tenants and their families.     (b) A landlord must keep the balustrade of a common porch in repair, and if, after having notice that uprights or rails are missing from the balustrade, or if after a reasonable length of time has elapsed while said rails are missing, the landlord fails to replace such uprights, and a child of a tenant is thereby injured, the landlord is unquestionably liable.     (c) It is a reasonable characteristic of children to use porches of a tenement house to play on, especially where the porch in front of their own kitchen is cut off by a stairway. This creates an implied invitation on the part of the landlord. Karp v. Barton, 164 Mo. App. 389; Herdt v. Koenig, 137 Mo. App. 589; Trunk Co. v. Delano, 162 Mo. App. 402; McGinley v. Alliance Trust Co., 168 Mo. 257; Bender v. Weber, 250 Mo. 563; Looney v. McLean, 129 Mass. 33; Siggins v. McGill, 62 Atl. 411; Readman v. Conway, 126 Mass. 374; Burke v. Hulett, 216 Ill. 545; Sawyer v. McGillicuddy, 81 Me.

318; Dollard v. Roberts, 14 L. R. A. 238. (2) The
duty of a landlord to keep in repair a porch used in
common by several tenants, and the balustrade sur-
rounding such porch, exists notwithstanding that such
porch and balustrade were in disrepair at the time of
the letting. The Massachusetts rule, on which appel-
lant so largely relies, is an anachronism and has been
expressly held not to be the law in this State. Lang
v. Hill, 157 Mo. App. 685; Haywood v. Kuhn, 168 Mo.
App..57. (3) The rule that a landlord owes no greater
legal duty to the children of a tenant than to the ten-
ant has no application to the cause at bar, for no great-
er legal duty was demanded of the landlord. Karp v.
Barton, 164 Mo. App. 389. (4) The evidence of a
promise by a landlord to repair a general defective
condition of a porch, as well as to repair the particular
condition which it is alleged was responsible for the
injury, is admissible in a tort action on the theory to
show the personal knowledge of the landlord of the de-
fective condition. In offering evidence as to a conver-
sation showing such knowledge, the entire conversation
is admissible and may be given in evidence. Herdt v.
Koenig, 137 Mo. App. 589, 598. (5) (a) The general
instruction offered by the plaintiff, and given by the
court in this cause, was correct and complete. But even
if it had not fully presented the defendant's position
to the jury, that position was presented in the numer-
ous other instructions given by the court. "If the
whole body of law delivered to the jury puts the case
in correct form, then all essentials to recovery or to the
defense need not appear in one general instruction."
Gordon v. Burris, 153 Mo. 223; Gibler v. Railroad,
203 Mo. 208; Wingfield v. Railroad, 257 Mo. 347. (b)
The general instruction given by the plaintiff does not
conflict with the other instructions given on behalf of
the defendant in any respect, nor does it conflict with in-
struction No. 7, as is alleged by appellant. On the con-
trary, the several instructions dovetail. (c) Where ap-

pellant complains of the giving of an instruction he must show not only that it was erroneous, but that it was prejudicial. Sec. 1850 and 2082, R. S. 1909. (6) (a) Where the party against whom is offered evidence of the testimony given by a witness at a former trial had the opportunity of confrontation and cross-examination, the evidence is competent where the witness is dead or insane. Greenleaf on Evidence (16 Ed. Wigmore), paragraph 163-g; Showen, Adm'r., v. Street Railway, 164 Mo. App. 41; 2 Wigmore on Evidence, par. 1402, 1403, pp. 1761, 1762. (b) The order in which testimony is admitted is largely discretionary with the court. Berkshire Lumber Co. v. Chick Inv. Co., 168 Mo. App. 342; Brashear v. American Patriots, 161 Mo. App. 566; Bell v. Jamison, 102 Mo. 71. (7) (a) The refusal of the court to allow the witness Manhart to show no notice was ever given to him was correct. Even if it had been shown that the defendant never received any notice whatever, still it was his duty under the law to inform himself by inspection from time to time of the condition of common porches and common stairways, and to repair them when in disrepair. Udden v. O'Reilly, 180 Mo. 650, 656; Herdt v. Koenig, 137 Mo. App. 589. (b) Moreover, no offer of proof was made as to what the witness Manhart would testify; hence there is nothing before this court on that question. Williams v. Wabash, 176 S. W. 900; Bast v. Mason, 165 Mo. App. 718; Kraxberger v. Roiter, 91 Mo. 404; Hickman v. Green, 123 Mo. 165.

REYNOLDS, P. J.—Action in tort by an infant through his father acting as next friend, to recover damages for an injury sustained by falling off of a porch along the second story of an apartment house owned by defendant. The petition proceeds on the theory that the porch, extending along the two apartments on the second story of the building, was for the common use of the tenants of both apartments and that

it was the duty of the defendant owner to keep the porch and railing surrounding it in a reasonably safe condition for the necessary and ordinary use by the tenants and members of the family, and especially by their children who might be lawfully using the porch, it being charged that for a long time prior to the date of the injury to the infant, this porch was out of repair, in that several uprights or slats in it had been and at the time of the injury were broken out and had not been replaced, thereby creating large apertures or openings which rendered the railing dangerous and unsafe for persons lawfully using the porch and more especially the plaintiff, and that defendant knew, or in the exercise of ordinary care could have known, that the porch railing was out of repair and unsafe and in a dangerous condition. Averring that on the afternoon of April 28, 1911, while rightfully using the porch, the plaintiff, a child then about eighteen months old, fell from the porch through one of these open places in the railing to the ground floor, a distance of some twenty feet or more, and as a result, broke the femur in his right leg, producing a permanent injury, and charging that this injury was directly had and caused by the negligence in failing to maintain the railing in a reasonably safe condition, and in failing to replace the missing slats, judgment is demanded for $5000.

The answer admits the ownership by defendant of the two-story brick building composed of six flats or apartments, giving their numbers, those on the second floor being numbered 2019A, 2021A and 2023A on Wash street in the city of St. Louis, and it is admitted that on or about March 15, 1911, the defendant rented to plaintiff's father the premises known as 2023A, but defendant denies each and every other allegation in the petition.

There was a verdict and judgment for plaintiff in the sum of $2000, from which defendant has duly perfected his appeal.

Perhaps the case will be better understood by here reproducing a sketch of the premises showing in part the three apartments or tenements on the second floor. There is some dispute between counsel as to the accuracy of this sketch, but in the main it was accepted as substantially correct. We avail ourselves of it, adding a few details not on it when used, but which we gather from the evidence, to make it a little plainer:

It would appear from the evidence that the railing around the entrance to the stairway marked ''X'' in the plat was close against the north railing of the porch. The width of this opening of the stairway and the distance from that to the north wall of the room is not in evidence, nor is the distance between the west end of the porch proper and the opening to the stairway, nor the distance from the end of the stairway railing to the partition (Z) between the Guller and Weinberg porches in evidence. The slat at or over which the child fell is the seventh or eighth slat west of the partition (Z) between the Guller porch and the remainder of the porch, at the place where the plat shows a chair (B).

The Millers occupied the west apartment (2023A), and the Weinbergs the next one east of that (2021A).

The evidence on the part of plaintiff tended to show that the porch running from ''A'' to ''Z'' and extending in front of the Miller and Weinberg apartments was but one porch; that the tenants of 2021A, occupied by the Weinbergs, to obtain access or egress to and from their apartment, passed along in front of the Miller apartment, 2023A, and so down to or up from the stairway, the entrance and exit of which was to the west. There is ample testimony that the children of the two families were in the habit of playing across and along the whole porch from one end to the other, more particularly on that part of it in front of 2021A, the Weinberg apartment, that being the largest clear space on the porch. All of the witnesses for plaintiff spoke of this porch before the two apartments as being but one porch, and it is not disputed that at the time of the accident there was no partition between that part of the porch in front of the Miller apartment and that part in front of the Weinberg apartment.

There was testimony tending to show that on the day of the accident, the infant plaintiff was with his mother in their kitchen, 2023A; that while the attention

of the mother was attracted to some household duties, the little fellow came out of the kitchen, wandered along the porch to where this slat or upright was out of the railing, at the point on the plat opposite to which the chair (B) is shown, and his mother, turning her head, saw him lean out of or through this aperture and ran to catch him. The mother testified in the most positive terms that there was no chair there at the time; that the infant had not climbed up on a chair and was not leaning over the top of the railing, but had fallen through the opening, and a young girl, daughter of Mrs. Weinberg, testified that before this she had moved that chair from this place and set it back against the north wall (C) of the apartment. Whereas there was just as positive testimony on the part of defendant that the chair was there, opposite the opening; that the child climbed up on it and was leaning over the top railing when he fell over it to the ground. There is no question over the serious injury to the infant plaintiff and that this injury was the result of the fall.

On the part of defendant, testifying for himself, it was also in evidence that he had not himself rented 2023A to the Millers, but that that had been done through an agent. He further testified that he had personally rented the premises 2021A to the Weinbergs and that in renting to them he had specifically rented the rooms, three of them, with the porch in the rear and with a cellar underneath. His testimony was that while there was then no division along the porch to divide the Weinberg part from the Miller part, that each section of the porch opposite these respective apartments pertained to and belonged to the tenant of that apartment. The evidence was without contradiction that both the Weinberg and Miller tenants used the stairway going from the porch of this second-story down to the ground floor in common, and that to get to or from it the tenants of 2021A were obliged to pass over that part of the porch which is in front of 2023A.

But while there is no evidence of any user by the tenants of 2023A of that part of the porch in front of 2021A, except by the children, as before stated, the testimony to that, as we have noted, is that the children of the two families used this space in common on which to play.

The Miller family had been tenants of this apartment some six weeks before the accident occurred, Mrs. Miller hiring the apartment through another tenant who had the keys to it and who showed her the rooms.

There was testimony tending to show that, in addition to the absence of a slat at the place, through or over which the child fell, slats were out at various other places along this porch banister, and that Mrs. Miller had placed pails or wash tubs at these openings in front of her apartment to prevent her child from falling through. It will be seen from the plat that the stairway marked "X" was the only one for the tenants of 2021A and 2023A, that marked "R" in front of the Guller apartment being for the sole use of the tenants of that apartment. The Guller apartment (2019A) is to the east of the Weinberg apartment, separated from it by a court, and there was a partition, marked "Z" on the plat, separating the Guller porch from that which extended in front of the Weinberg and Miller premises.

The testimony on behalf of plaintiff tended to show that the landlord (defendant) had been notified of the absence of these uprights or slats from the banister along this porch on several occasions; that he had been there before the accident and had seen them and said he would repair the porch. On his part, defendant denied this most positively, denying that he had been on the premises between the renting and occupancy of the Millers and the time of this accident.

This is a rather meagre outline of the testimony taken at the trial of this case, the trial occupying parts of two days, the testimony, as brought up to us, cover-

ing some two hundred and twelve pages, but we think it sufficient, in connection with the plat, to an understanding of the facts.

At the conclusion of plaintiff's testimony and again at the conclusion of all the testimony, defendant unsuccessfully interposed demurrers, whereupon the court, at the instance of plaintiff, gave three instructions. At the instance of defendant it gave two instructions as asked, modifying others asked by defendant.

We do not consider it necessary to set out the instructions in detail, as the only attack upon them is to a part of the main instruction given at the instance of plaintiff, and we will set out so much of that as necessary when we turn to the consideration of that attack.

Learned counsel for respondent have filed a very elaborate and learned argument in support of their motion to dismiss or affirm, claiming that appellant had failed to comply with section 2048 of the Revised Statutes 1909, and with the rules of practice of this court numbered 12, 14 and 15. That motion is overruled.

Counsel for appellant make seven assignments of error which we will consider and dispose of in their order.

The first is to the effect that the obligation fastened by law upon the landlord to keep in reasonably safe condition appurtenances used in common, does not accrue to a tenant who takes possession with knowledge and acquiescence in the alleged or claimed defect. The second and third assignments are in line with this, namely: Second, that if the alleged or claimed defect in the appurtenances used in common would not be such negligence as to amount to a menace to the tenant, it could not be an act of negligence as to the member of his family, because the landlord owed no greater duty to the member of the family than to the tenant. (The point of this is that as the opening was too small for the tenant himself to fall through, the landlord need

not guard it against a small child, an infant member of the family.) It is further contended in the third assignment, that ''the alleged or claimed defect must be shown to have been within or reasonably adjacent to the appurtenance used in common in order that there can be a reservation by act or intendment of law, and where it is a distance out of the appurtenance used in common, so that it was not a menace in the use thereof, the reservation must be shown to have been special or under some agreement with the landlord.'' (We do not appreciate the exact point here in the mind of counsel. Beyond question the absent slat was on that part of what is claimed to be the common porch.) The common use of the porch, it is urged, ''would not create in the landlord such reservation, and where the alleged defect is not reasonably in or adjacent to the appurtenance used in common, and there is no evidence of a special reservation of the porch to the use of both families, there is no case made, although the tenants used the porch as a common appurtenance.''

The authorities from our State cited in support of this are Eyre v. Jordan; 111 Mo. 424, 19 S. W. 1095; McGinley v. Alliance Trust Co., 168 Mo. 257, 66 S. W. 153; Bender v. Weber, 250 Mo. 551, 157 S. W. 570, and Marcheck v. Klute, 133 Mo. App. 280, 113 S. W. 654.

An examination of these cases does not lead to the conclusion drawn from them by the learned counsel for the appellant.

In Eyre v. Jordan, supra, it was held that the landlord was not liable to a visitor of his tenant for injuries resulting from a condition of the demised premises caused by the tenant only. That was the matter in decision before the court in that case and is not pertinent here.

In McGinley v. Alliance Trust Co., supra, it was held that the landlord who leases separate portions of the same building to different tenants, and retains exclusive control, for the purpose of repairs and con-

struction, of porches, galleries and stairways used in common by all the tenants, is under an implied obligation to use reasonable diligence to keep such reserved parts in a safe condition for the use of a tenant who occupies a part of the premises and for the members of his family; and for a failure to perform that duty the law attaches to him liability for injury to such tenant or to a member of his family. We copy the above from the syllabus in the case which is an accurate statement of the conclusion arrived at by the court. In that case a daughter of the tenant, sitting on the steps of the common stairway, arose to make room for her mother to pass and in doing so leaned against the railing which broke, in consequence of which she fell to the ground below. Our Supreme Court held that whether this was such a use as the landlord, when he rented the rooms to the father, and thereby invited his family to make use of the stairway, had a right to anticipate would naturally be made of it, was a question for the jury in the light of the evidence and the ordinary experiences of mankind.

In Bender v. Weber, supra, liability of the landlord for an accident happening to one going into the premises of a tenant, was denied on the ground that that part of the premises where the accident happened was under the exclusive control of the tenant and not of the landlord.

In Marcheck v. Klute, supra, our court, (1. c. 287), quoting the rule announced in McGinley v. Alliance Trust Co., and the text on the same subject from 18 Am. & Eng. Ency. of Law (2 Ed.), 220, holds that the particular premises in question, a stable, in which the accident occurred, were not demised to several tenants, but that they were under the sole control of the tenant..

We therefore do not think that these decisions of our courts, cited by learned counsel for appellant, support their position when the facts in those cases and

in this case are considered. There was testimony that this was a porch used in common by the tenants of the two apartments, and there was positive testimony tending to show that the landlord had actual knowledge of the defects in the banister. Beyond all question the stairway was for the common use of both tenants, and that to use it, it was necessary to pass to and fro over the premises occupied by the family of which plaintiff was a member. Where the line stopped, if there was any such line, where the common user ended, cannot be determined by any arbitrary rule. So it left for the determination of the jury, as was done here, as one of fact, the question whether this whole porch was under the common use of the tenants of both apartments and so designed by the landlord. Either actual knowledge of the defective condition of the railing, or such knowledge as the law implies by the facts and circumstances in the case, is sufficient to charge the landlord; it is not essential that he have actual knowledge. So our Supreme Court said in Udden v. O'Reilly, 180 Mo. 650, 79 S. W. 691. In that case it is said (l. c. 651):

"Actual knowledge of a fact or thing and the failure to act according to its requirements, is not more culpable in the eyes of the law under many circumstances than careless ignorance of those facts or things which the exercise of common prudence and duty would have revealed and made known."

In Miller v. Peck Dry Goods Co., 104 Mo. App. 609, 78 S. W. 682, it is said by Judge Ellison, speaking for the Kansas City Court of Appeals (l. c. 614), after stating that defendant there had maintained rooms as reception and waiting rooms for the patrons of the store who were accompanied by their children and was an invitee: "From this, it follows that the same duty which the owner owes to his customer he likewise owes to the customer's child."

In Herdt v. Koenig, 137 Mo. App. 589, 119 S. W. 56, our court held that where several portions of a property are let to different tenants, with a part in common for the use of them all, the obligation is imposed by law on the landlord to exercise reasonable diligence to keep such common portions of the property in a reasonably safe condition for such purposes as may reasonably be anticipated to be a proper use of the property, and that such obligation extends to the guests of the tenants, whether expressly invited or voluntary callers.

In Lang v. Hill, 157 Mo. App. 685, 138 S. W. 698, Judge JOHNSON, speaking for the Kansas City Court of Appeals, considered the point made by appellant, that "even if the defendants reserved control of the stairway, they are not liable in this action, because the condition of the steps at the time of the accident was substantially the same as when the plaintiff moved into the house, and was obviously dangerous." After stating that this proposition is supported in some jurisdictions, notably in Massachusetts, and that in other jurisdictions the duty of the landlord in respect to the maintenance of a common passageway in premises occupied by several tenants, is that of due care to keep it in such condition as it was in or purported to be in at the time of the letting, citing a number of Massachusetts cases, Judge JOHNSON says (l. c. 688):

"But that rule does not obtain in this State and is unsuited to the needs of modern conditions. In these days of mammoth office buildings and large apartment houses, the Massachusetts rule is an anachronism. The better rule prevails in this State that, with respect to those portions of the buildings and improvements, the control of which is reserved by the landlord, he owes his tenants the duty of exercising reasonable care to maintain them in a reasonably safe condition for the uses of the tenants."

McGinley v. Alliance Trust Co., supra, Marcheck v. Klute, supra, Andrus v. Bradley-Alderson Co., 117 Mo. App. 322, 93 S. W. 872; Collins v. Tootle Estate, 156 Mo. App. 221, 137 S. W. 273, are cited by Judge Johnson in support of this proposition. In this latter case the jury found, as a matter of fact, that the stairway upon which the accident happened had been leased with the entire building to which it pertained to a subtenant who had entire possession and control thereof, and that under such state of facts the rule of law making the landlord responsible did not apply.

In Horn Trunk Co. v. Delano, 162 Mo. App. 402, 142 S. W. 770, we held the landlord liable for injuries happening for failure to repair any part of the premises reserved by him for the use of all the tenants in his building.

In Karp v. Barton, 164 Mo. App. 389, 144 S. W. 1111, our court distinctly held that the obligation of the landlord extends the same to those visiting or calling upon members of the family of the tenants as it does to the tenant himself, and that the child of one who boarded and lodged with the tenant had a right to be upon a porch of an upper story of the building which was used in common by all the tenants, and that the parent could recover from the landlord for the death of the child owing to a defect in the porch which the landlord had negligently failed to repair.

So that it will be seen that the decisions of the courts of our own State, Supreme and Appellate, are unanimous in holding the landlord responsible for accidents occurring to the tenant or a member of his family or a guest and irrespective of the age of the person injured, and whether a child of the tenant or a child of a guest of the tenant, for accidents resulting from the negligent act of the landlord in failing to keep in repair and make proper repairs in that portion of the premises open to the common use of the tenants.

of the several apartments, whether he had actual knowledge or the condition of the premises was of such a character as to have compelled him to take notice that they were out of repair and dangerous to those who did or might use them, and this is so whether the testimony shows a specific reservation of control by the landlord, or whether such reservation may be implied from the common user.

Learned counsel for appellant have cited many cases to the contrary from other jurisdictions, particularly Massachusetts, as was the fact in Lang v. Hill, supra, and we say, as did Judge JOHNSON in that case, that the rule prevailing in other jurisdictions to the contrary is an anachronism which we decline to follow.

In the case at bar, by the second instruction asked by and given at the instance of plaintiff, the jury were distinctly instructed that one of the matters of fact which they must find before they could find for the plaintiff was "that in the rear of these two flats there was a wooden porch extending across the rear of both, and adapted and intended by the defendant herein for use in common by the tenants of both of said flats and their families; . . . that said porch and stairway were intended by the defendant herein for the use in common of the tenants of both of said flats and were so used at the time mentioned in the evidence." In instructions given at the instance of defendant this same issue was presented to the jury. So that, apart from the law, on the facts, establishing this common usage, there was ample evidence warranting the jury in concluding that this porch was for the common use of the tenants of the two apartments and that it was used by them in common. There was abundant evidence that the slats were out of this railing and particularly out at the place where this infant plaintiff is said to have fallen through and that the landlord had visited the premises before the accident and had his attention

called to the absence of slats in the balcony. It is true the landlord denied this very positively, but that made it a question for the jury, and their finding on it is conclusive on us.

The fourth assignment is that the court erred in admitting evidence of an agreement with the tenant to replace the slat, for the reason that the action is not and could not be in behalf of the plaintiff upon such agreement, it being an action in tort. It is true that this is not an action on the contract to repair, but is an action in tort for negligent failure to repair an obvious defect. The learned counsel for appellant cite several authorities in support of the proposition that testimony of a breach of the obligation arising under the law, testimony that defendant promised or agreed with the defendant to fix the porch, would have been inadmissible in an action in tort. That proposition is true.

In Marcheck v. Klute, supra, Judge GOODE, who delivered the opinion in that case, held the question as to whether an action would lie in tort or only in contract for an injury to the tenant, or as to whether if the person whose injury resulted in his death might have sued in contract had he lived and hence the right to sue in that form of action be transmitted to the parents or legal representatives on his death, as open questions, that learned Judge saying (l. c. 293), that he had "found no case (in our decisions) wherein the court considered whether default in the performance of a contract whereby another's death was caused, falls within the purview of such a statute;" and as these questions had not been treated by counsel our court was unwilling, without the help of briefs or arguments to decide them. Subsequently, however, our court, in Murphy v. Dee, 190 Mo. App. 83, 175 S. W. 287, on the authority of Glenn v. Hill, 210 Mo. 291, 109 S. W. 27, and following the conclusion of the Kan-

sas City Court of Appeals in Dailey v. Vogl, 187 Mo. App. 261, 173 S. W. 707, held that where a landlord breached an agreement to repair the demised premises the tenant who is injured by the breaking of the railing of a porch, cannot in an action in tort recover damages for the injury, his remedy being for a breach of the contract.

The application of this point here made by learned counsel for appellant lies in the admission of testimony to the effect that the landlord had promised to make repairs. But when we examine the record as to the circumstances under which this evidence was admitted, it is very apparent that it was admitted on the distinct ground that it was for the purpose of showing knowledge on the part of the landlord of the existence of the dangerous condition; of the absence of the slats in the banister. Counsel for respondent, as well as the court, repeatedly stated that this was the purpose and only purpose for which this evidence was admitted and it was admitted in giving the whole of the conversations between different witnesses and the landlord as to the defects in the railing. Furthermore, the instructions given in the case in no manner whatever count upon this contract to repair or authorize the jury to find any verdict based on any such contract. We see no error here in the admission of the evidence under the conditions and for the purpose for which it was admitted.

The fifth assignment is to the alleged error of the court in admitting in evidence in rebuttal the stenographer's notes of the testimony of a witness given at a former trial of this same case. It appears that at this former trial this witness was examined and cross-examined and his testimony taken down by the official stenographer of the court and written out by him, but that no bill of exceptions of proceedings at that trial had been signed and filed. It was admitted by counsel for defendant that if the stenographer was

present he would testify that it was a correct copy of his notes and was a correct reproduction of the testimony given by this witness. It was also admitted that this witness was dead at the time of this second trial.

Strenuous objection was made to the admission of this by way of rebuttal. It is true that it was important testimony for plaintiff which should have been introduced in chief. But it has been held time and again by our Supreme Court and Courts of Appeals that the order of the introduction of testimony is so largely within the discretion of the trial court that, save in a case of abuse of that discretion, the appellate court will not interfere. We see no abuse here of that discretion.

The question then remains as to the admissibility of it at this trial. The learned counsel for appellant cite in support of their objection to the use of this testimony Padgitt v. Moll et al., 159 Mo. 143, 60 S. W. 121, and Becher v. Deuser, 169 Mo. 159, 69 S. W. 363, as also Greenleaf on Evidence, sec. 437, and Jones on Evidence, (2 Ed.), sec. 343.

In Padgitt v. Moll the point in decision was whether the jury, considering the case, should be allowed to have, as they asked, a transcript of the evidence of certain parties who had testified in the case. The trial court allowed them to have it and the Supreme Court held this to be error. There are some remarks in the case as to the effect of testimony taken down by a stenographer that seem to bear out appellant's contention but they are not necessary and not in decision in that case.

In Becher v. Deuser, supra, the point in decision was as to whether the stenographer's notes taken at the trial of the case constituted the basis for an amendment of a judgment *nunc pro tunc*. Our Supreme Court there held that they did not.

We do not think these decisions nor the text-writers support the position of counsel. In fact, Mr. Greenleaf, sec. 163, and Mr. Jones (2 Ed., sec. 341) in their treatise on evidence give the rule contrary to the contention of counsel.

The English rule on this subject, as stated in Wharton on Evidence, sec. 177-178, and taken from the pronouncement of Lord Mansfield in Mayor of Doncaster v. Day, 3 Taun. 262, is,

"What a witness, since dead, has sworn upon a trial between the same parties, may, without any order of the court, be given in evidence, either from the judge's notes, or from notes that have been taken by any other person, who will swear to their accuracy; or the former evidence may be proved by any person who will swear from his memory to its having been given."

It appears that the court was asked, at a trial during which those witnesses had testified, that an order of court be made that such testimony might be read at the next trial, if at that time these witnesses were unable to attend. As will be seen, Lord Mansfield held such an order unnecessary for the reason given by him.

This decision is quoted approvingly in a very exhaustive opinion by the Texas Court of Criminal Appeals, in Robertson v. State, 63 Texas Cr. Rep. 216, 142 S. W. 533, and that case is cited and the principal there announced followed by the Kansas City Court of Appeals in Showen, Admr. v. Met. Street Ry., 164 Mo. App. 41, l. c. 50, and following (148 S. W. 135). Judge Johnson, who wrote the opinion in that case also refers to Padgitt v. Moll et al., supra, saying of it, that it does not decide the question then before the Kansas City Court of Appeals. As noted, Mr. Greenleaf and Mr. Jones both recognized the admissibility of such notes, when properly vouched for as a true report. Mr. Wigmore (2 Wigmore on Evidence, pp. 1761, 1762, par. 1401 and following), recognizes the same rule as

in force in modern practice. If, as held by Lord Mansfield, testimony of a witness, given at a former trial between the same parties, may be given in evidence either from the judge's notes, never very full, or from notes that have been taken by any other person, who will swear to their accuracy, or may be proved by any other person who will swear from his memory, always apt to be fallible, to its having been given, surely, when that testimony has been taken down by an official court reporter, a sworn officer, admittedly correctly transcribed and given as so transcribed, it is admissible in evidence, even if not embodied in a bill of exceptions, and so we hold here. The only office of a bill of exception, in so far as covering this testimony, would be to preserve and authenticate it. Both of these were covered here by the admission of counsel as to the correctness of the transcription.

The sixth error assigned is to the giving of a general instruction which it is claimed ignored defendant's defense that the child fell over the balustrade and is broader than the pleadings, and presented an entirely different issue from that presented in the pleadings. In support of this assignment it is claimed that the petition charges that the injury was caused by the defendant negligently suffering the railing inclosing the porch to become unsafe and dangerous by reason of the uprights being broken out, thus creating large openings in the railings, and in failing to replace the missing uprights, while the instruction, it is urged, completely ignores this allegation and authorizes the jury to find for plaintiff, "If you find and believe from the evidence that on April 28, 1911, and for several weeks prior to that date, some of the upright rails of said balustrade or railing were broken out of said balustrade, and continued to be broken out for several weeks prior to said date, and that said porch was thereby rendered unsafe and dangerous to plaintiff while using said porch; and if you find and believe from the

evidence that for several weeks prior to April 28, 1911, the defendant, Morris Geeser, knew, or that, in the exercise of ordinary care he should have known, that such upright rails of said balustrade or railing were broken out of said balustrade, and that said porch was thereby rendered unsafe and dangerous, then it was the duty of defendant to repair the said balustrade or railing so as to put said porch in a reasonably safe condition," etc. This is the part of the instruction which is objected to, although this part is not very accurately set out in the brief and argument of the learned counsel for appellant. We do not think that this criticism of the instruction is sustainable in any particular. We see no change or enlargement in it from the cause of action stated in the petition. It is true that nothing is said in this instruction as to the defense of the defendant, that the infant had crawled upon the chair and fallen over the top of the banister instead of through this opening. We do not think that it was necessary to have done so in this instruction. That phase of the case was distinctly presented in instructions asked and given at the instance of the defendant and was before the jury, and this instruction given at the instance of plaintiff, told the jury, in effect, that unless it found that the child fell through the railing, plaintiff could not recover.

The only question in issue as to the place of falling was whether he fell over the top of the banister or through the opening in the banister. All of the evidence on both sides concedes that he fell from the porch at the identical place where the slat was out, either over the banister from a chair or through the banister because of the absence of the slat. The criticism of plaintiff's instruction, therefore, that it does not require a finding of the specific fact alleged, is unimportant, for the real issue related, not to whether the child fell through the particular place where the particular slat was absent or some place where another

Miller v. Geeser.

slat was absent, but whether it fell through the opening where the defendant's evidence says the chair stood, or over the banister at that same place. In this view the criticism is without merit.

The final assignment of error, made but not argued, is to the exclusion of the testimony of an agent for the defendant, his collector, by whom it was offered to prove that he, the collector, did not know, or that no notice had been given to him as such collector, that the railing in the porch was out of repair, and in admitting testimony that defendant promised to repair the balustrade. The last part of this assignment we have heretofore considered. We think it was entirely proper to exclude this testimony of the agent. The jury had before it positive testimony that defendant himself, as owner, had knowledge and had been notified. There was no testimony on the part of plaintiff of any notice to this collector. So that it could not be said that it was in contradiction of any testimony offered by plaintiff. The fact that the collector, as agent and representative of defendant, knew, or did not know, of this defect, is entirely immaterial, if the defendant himself knew or had reasonable cause to know of the defect.

On a careful consideration of this case, and of the very able arguments and briefs of counsel, we can come to no conclusion but that no reversible error has been committed. The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.,* concur.